UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JILL ALTMAN,<br>Individually and on behalf of a class,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>WHITE HOUSE BLACK MARKET, INC.;<br>And DOES 1-10,<br><br>　　　　　Defendants. | )<br>)<br>)<br>) Case No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**INTRODUCTION AND FACTA BACKGROUND**

1. Plaintiff Jill Altman ("Plaintiff"), individually and on behalf of a class defined herein, brings this action against White House Black Market, Inc. ("Defendant") to secure redress for violations of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA").

2. One common modus operandi for those seeking to commit fraud or identity theft is to obtain credit card receipts and use the information published on the document.

3. The publication of more than the last five digits of a credit card or debit card number or an expiration date on customer receipts increases the possibility of identity theft or fraud.

4. Any person who obtains a receipt containing more than the last five digits of a credit card or debit card number or the expiration date can use that data in an attempt to dupe the actual cardholder, or other potential information sources, into disclosing additional confidential financial information relating to the cardholder. The more information that is disclosed on the receipt, the easier it is to pilfer additional confidential financial information.

5. In 2014, the Federal Trade Commission's Consumer Sentinel Network reported over 2.5 million complaints, of which 60 percent were related to fraud and 13 percent were related to identity theft. With over 1.5 million fraud-related complaints, the FTC reported customers paying over $1.7 billion as a result of those fraud complaints. *See* https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book-january-december-2014/sentinel-cy2014-1.pdf

6. To curb this means of identity theft, Congress passed FACTA and prohibited merchants, such as Defendant, who accept credit cards and debit cards from issuing electronically-generated receipts that display either the expiration date or more than the last five digits of the card number.

7. The operative provision of FACTA, codified at 15 U.S.C. §1681c(g), provides that:

> No person that accepts credit cards or debit cards for the transaction of business **shall print more than the last 5**

> **digits of the card number or the expiration date** upon any receipt provided to the cardholder at the point of sale or transaction.  (emphasis added).

8. Section 1681c(g) is "not ambiguous." It "expressly prohibits printing more than the last five digits of the credit/debit card numbers and also prohibits printing the card's expiration date." Pirian v. In-N-Out Burgers, 06-1251, 2007 WL 1040864, *3 (C.D. Cal. Apr. 5, 2007); accord, Iosello v. Leiblys, Inc., 502 F. Supp. 2d 782 (N.D. Ill. 2007); Follman v. Hospitality Plus of Carpentersville, Inc., 532 F. Supp. 2d 960 (N.D. Ill. 2007); Follman v. Village Squire, Inc., 542 F. Supp. 2d 816 (N.D. Ill. 2007); Korman v. Walking Co., 503 F. Supp. 2d 755 (E.D. Pa. 2007); Ramirez v. MGM Mirage, Inc., 524 F. Supp. 2d 1226 (D. Nev. 2007); see also In re The TJX COMPANIES, INC., MDL No. 1853., No. 07-md-1853-KHV, 2008 WL 2020375, at *1 (D. Kan. May 9, 2008) (citing 15 U.S.C. § 1681c(g)(1)) ("FACTA prohibits retailers who accept credit or debit cards from 'print[ing] more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.'").

9. Congress then gave merchants who accept credit cards and/or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006.

10. With respect to point of sale machines that were first put into use after January 1, 2005, 15 U.S.C. § 1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. § 1681c(g)(1).

11. With respect to point of sale machines that were in use before January 1, 2005, 15 U.S.C. § 1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. § 1681c(g)(1) on or after December 1, 2006.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p ("FCRA").

13. Venue is proper because Defendant conducts business within this jurisdiction and the transaction giving rise to this lawsuit occurred within this jurisdiction.

## PARTIES

14. Plaintiff, Jill Altman, is a consumer as defined in 15 U.S.C. § 1681a(c)

15. Defendant White House Black Market is a foreign corporation with an address of White House Black Market, 11215 Metro Parkway in Fort Myers, Florida 33966. Defendant operates a number of stores in the Northern District of Georgia.

16. Defendant is a "person that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.

17. Defendants Does 1-10 are individual officers, directors, employees and agents of defendant who authorized, directed or participated in the violations of law complained of.

## FACTS

18. In transacting its business, Defendant uses one or more cash registers and/or other machines or devices that electronically print receipts for credit card and debit card transactions.

19. Plaintiff has a bank issued credit and/or debit card as defined under 15 U.S.C. § 1681a.

20. On May 16, 2015, Plaintiff used her American Express credit card to make a purchase at Defendant's location at Phipps Plaza in Atlanta, Georgia.

21. At the completion of her purchase, Plaintiff was given a computer-generated cash register receipt that published more than the last five (5) digits of Plaintiff's credit card number.  In fact, the customer copy published the first six and the last four digits of Plaintiff's credit card; a total of <u>ten</u> digits of the credit card.

22. Defendant's wanton violation is tantamount to turning over Plaintiff's physical credit card to an identity thief.  Multiply this violation by thousands,

hundreds of thousands or millions of times and the Defendant has created a potential criminal bonanza for identity thieves.

## DEFENDANT'S KNOWLEDGE OF FACTA'S REQUIREMENTS

23. Defendant accepts Visa, MasterCard, Discover credit and debit cards and American Express credit cards in the course of transacting business with persons who make purchases at Defendant's retail locations.

24. Banks and credit card associations (i.e. Visa, MasterCard, American Express, Discover, etc.) are keenly aware of the importance of truncating expiration dates as required under FACTA. Accordingly, they informed their merchants for years about FACTA and what a company must do to be compliant.

25. VISA, MasterCard, the PCI Security Standards Council – a consortium founded by VISA, MasterCard, Discover, American Express – companies that sell cash registers and other devices for the processing of credit or debit card payments, and other entities informed merchants about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers and prohibition on the printing of expiration dates, and the need to comply with the same.

26. Visa, MasterCard, American Express, and Discover by contract require Defendant to be FACTA compliant.

27. Visa explicitly instructed merchants, including Defendant, that a credit or debit card number must be truncated to no more than the last five digits and that the expiration date must be truncated entirely.

28. For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all." These statements were accompanied by a picture of a receipt showing precisely what had to be removed. VISA required complete compliance by July 1, 2006, five months ahead of the statutory deadline. Defendant would have received this and subsequent Rules from Visa.

29. MasterCard explicitly instructed merchants, including Defendant, that a credit or debit card number must be truncated to no more than the last five digits and that the expiration date must be truncated entirely.

30. American Express explicitly instructed merchants, including Defendant, that a credit or debit card number must be truncated to no more than the last five digits and that the expiration date must be truncated entirely.

31. Discover explicitly instructed merchants, including Defendant, that a credit or debit card number must be truncated to no more than the last five digits and that the expiration date must be truncated entirely.

32. A bulletin dated June 14, 2006 issued by AllianceData, another processor, informed its customers that under FACTA "no person that accepts credit cards or debt cards for the transaction of business shall print **more** than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale transaction." It further stated that Visa required compliance by July 1, 2006 and MasterCard by April 1, 2005.

33. Defendant is owned by the publicly traded company on the New York Stock Exchange of Chico's FAS, Inc.

34. Chico's FAS, Inc. is a member of or receives information from the National Retail Federation. Chico's FAS, Inc's employees are members of or receive information from the National Retail Federation.

35. Upon information and belief, Defendant is a member of or receives information from the National Retail Federation. Upon information and belief, Defendant's employees are members of or receive information from the National Retail Federation.

36. Upon information and belief, the National Retail Federation provided Defendant and Chico's FAS, Inc. guidance on FACTA's truncation requirements.

37. Through the National Retail Federation, credit card merchants and other methods of notification, Defendant was aware of FACTA's requirements,

that the purpose of FACTA is to prevent theft of credit and debit card numbers, and their potential exposure for failure to comply.

38. Similarly, on January 10, 2007, the National Retail Federation sent a memo to the general counsels of its members warning that failure to suppress "credit card expiration dates or anything beyond the last five digits of a customer's credit card number on the copy of the receipt provided to the customer" was likely to result in a lawsuit.

39. At the time of the FACTA violations identified in this Complaint and before, Defendant knew of its obligations under FACTA and the importance of the truncation requirements.

40. Most of Defendant's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement.

41. FACTA compliance requires either dedication of internal resources or payment to third-party vendors to bring a company into compliance with FACTA.

42. Defendant could readily have done the same, but either recklessly failed to review their own FACTA compliance or intentionally opted to save money by not bringing its stores into compliance.

43. The cost of truncating credit card or debit card numbers and/or expiration dates is significant, but minimal when compared with the risk posed to thousands of Defendant's customers.

44. Despite knowledge of FACTA's requirements, contractual requirements from credit card issuers that Defendant must be FACTA compliant, and notifications from credit card issuers and the federal government, Defendant continues to willfully disregard FACTA's requirements and continue to use cash registers or other machines or devices that print receipts in violation of FACTA after June 3, 2008.

45. On information and belief, Defendant has failed to comply with FACTA's truncations requirements at other retail locations throughout the class period.

## VIOLATION ALLEGED

46. Defendant violated 15 U.S.C. § 1681c(g)(1), which provides that:

> …**no person** that accepts credit cards or debit cards for the transaction of business **shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.**

> 15 U.S.C. § 1681c(g)(1) (emphasis added).

47. The FCRA, 15 U.S.C. § 1681n, further provides:

> § 1681n. Civil Liability for willful noncompliance (a) In general. Any person who willfully fails to comply with any requirement imposed under this title [15 USC §§ 1681 *et seq.*] with respect to any consumer is liable to that consumer in an amount equal to the sum of - (1) (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; ***
>
> (2) such amount of punitive damages as the court may allow; and
>
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court…

48. Defendant knew of and ignored their legal duty to truncate requisite information from the Plaintiff and the class members' credit or debit cards at the point of sale or alternatively, Defendant failed to inquire at all about their duty to truncate as required by the statute.

49. Defendant received information on multiple occasions regarding the truncation requirements and its importance for prevention of identity theft and fraud.

50. Notwithstanding all of the publicity and the Defendant's knowledge of the statute's requirements, Defendant willfully failed to comply with FACTA thereby putting all of its customers' financial identities at risk.

## CLASS ALLEGATIONS OF THE VIOLATION ALLEGED

51. Plaintiff brings this action on behalf of a class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

52. The proposed class is defined as:

> All persons who used either a Visa, MasterCard, or Discover debit or credit card, and/or American Express credit card at any of Defendant's locations where Defendant provided an electronically-printed receipt at the point of sale or transaction that displayed the expiration date of that person's credit or debit card or more than the last five digits of that person's credit or debit card for a time period beginning five years prior to the filing of this lawsuit until the date the class is certified.

53. The class is so numerous that joinder of all individual members in one action would be impracticable.

54. On information and belief, Defendant was providing improperly truncated receipts to their customers at all of their locations.

55. There are well over 100 persons who used either a Visa, MasterCard, or Discover debit or credit card, and/or American Express credit card at Defendant's business locations where Defendant provided an electronically printed receipt at the point of sale or transaction that violated FACTA's truncation requirements for a time period beginning from a time 5 years prior to the filing of this lawsuit.

56. Plaintiff's claims are typical of the claims of the class members.  All are based on the same legal theories and arise from the same unlawful and willful

conduct. There are common questions of fact and law affecting members of the class, which common questions predominate over questions which may affect individual members. These include the following:

    a. Whether Defendant had a practice of providing customers with a sales or transaction receipt which failed to comply with the truncation requirement;

    b. Whether Defendant thereby violated FACTA; and

    c. Whether Defendant's conduct was willful.

57. Plaintiff will fairly and adequately represent the class members.

58. Plaintiff has no interests that conflict with the interests of the class members.

59. Plaintiff has retained experienced counsel in consumer class action matters.

60. A class action is superior to other available means for the fair and efficient adjudication of the claims of the class members. Individual actions are not economically feasible.

WHEREFORE, Plaintiff requests this Honorable Court to: 1) certify the class as described herein; and 2) enter judgment in favor of Plaintiff and the class members and against Defendant for:

    a. Statutory damages of no less than $100 nor more than $1,000 per violation;

    b. Attorney's fees and costs; and

    c.    For such other and further relief as the Court may deem proper including pre-and post-judgment interest and punitive damages.

## JURY TRIAL DEMAND

Plaintiff demands a jury on all issues so triable.

DATED this 8th day of July 2015.

    Respectfully submitted,

    By: /s/   Shimshon Wexler
    Shimshon Wexler
    Georgia Bar No. 436163
    1411 Dalewood Dr. NE
    Atlanta, GA 30329
    (212) 760-2400
    (917) 512-6132 (FAX)
    swexleresq@gmail.com