**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| JILL ALTMAN, individually and on behalf of a class, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:15-cv-02451-SCJ-CMS |
| vs. | ) ) | |
| WHITE HOUSE BLACK MARKET, INC., and DOES 1-10, | ) ) ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF DEFENDANT WHITE HOUSE BLACK MARKET'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant, White House Black Market, Inc. ("WHBM"), pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), submits this Brief in Support of its Motion to Dismiss Plaintiff's Complaint.  As discussed below, Plaintiff lacks standing to maintain her lawsuit, and fails to state a claim under Rule 12(b)(6) in any event.  Accordingly, her Complaint should be dismissed.

## INTRODUCTION

Plaintiff purports to assert a single claim against WHBM, alleging a violation of the Fair and Accurate Credit Transactions Act ("FACTA") amendments to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). Plaintiff alleges that WHBM violated FACTA, and thus the FCRA, by publishing

more than the last five digits of her credit card number on her receipt when she made a purchase at the WHBM store at Phipps Plaza in Atlanta. On that thin allegation, Plaintiff proposes a nationwide class action against WHBM.

Plaintiff's claim suffers, however, from a fatal defect – she lacks standing to maintain her lawsuit under Article III of the Constitution. Plaintiff merely alleges that the supposed FCRA violation gives rise to the increased possibility of identity theft. That, however, is not an allegation of an actual or imminent injury sufficient to satisfy Article III's "injury-in-fact" requirement for standing, as numerous courts have held in light of recent Supreme Court precedent. Nor does Plaintiff satisfy the other two requirements necessary to establish Article III standing. Accordingly, Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(1).

Alternatively, dismissal is appropriate under Rule 12(b)(6). The Complaint asserts only one claim – willful violations of FACTA/FCRA. The Complaint does not adequately plead a claim for a willful FCRA violation, which requires a minimum showing of recklessness by WHBM. The same allegations, made by the same plaintiffs' counsel, were rejected earlier this year at the pleadings stage and resulted in a dismissal under Rule 12(b)(6). This Court should hold likewise and, in the (unlikely) event that Plaintiff is deemed to have Article III standing to sue in the first instance, should dismiss the Complaint under Rule 12(b)(6).

## RELEVANT FACTUAL BACKGROUND

### I.   THE ALLEGED STATUTORY VIOLATION

Plaintiff's factual allegations, as they pertain to her, are extremely skeletal. She alleges that, on May 16, 2015, she used a credit card to make a purchase at WHBM's retail store at Phipps Plaza in Atlanta, Georgia. (Doc. 1, ¶ 20.)  At the conclusion of the transaction, Plaintiff alleges, she was given a computer-generated cash register receipt that published the first six and the last four digits of her credit card.  (Id., ¶ 21.)  That event, Plaintiff alleges, violated FACTA.  (Id., ¶¶ 46-50.)

Plaintiff avers that the alleged statutory violation "increases the possibility of identity theft or fraud" and asserts that WHBM's "wanton violation is tantamount to turning over [her] physical credit card to an identity thief."  (Id., ¶¶ 3, 22.)  She alleges "[o]n information and belief" that WHBM "was providing truncated receipts to their customers at all of their locations."  (Id., ¶ 54.)

### II.   PLAINTIFF'S CLAIM AND HER PROPOSED CLASS

Plaintiff's one-count Complaint alleges that WHBM violated FACTA. Specifically, Plaintiff purports to maintain her claim under § 1681c(g) of the FCRA, which states:  "No person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or

the expiration date upon any receipt provided to the cardholder at the point of sale or transaction."  (Doc. 1, ¶ 46 (quoting § 1681c(g)).)

Plaintiff does not, however, allege that she sustained an actual injury as a result of the purported statutory violation or that she has been the victim of an actual or attempted identity theft, nor does she seek to recover actual damages for the alleged violation.  Instead, she alleges that WHBM "willfully failed to comply with FACTA," which purportedly placed "all of its customers' financial identities at risk."  (*Id.*, ¶ 50.)  Plaintiff, therefore, seeks only to recover statutory damages under FACTA/FCRA pursuant to 15 U.S.C. § 1681n.  (*Id.*, ¶ 47.)  In addition to statutory damages "of no less than $100 nor more than $1,000 per violation," Plaintiff seeks punitive damages, among other relief.  (*Id.* at 13-14.)

Not only does Plaintiff seek to recover the statutory damages for herself, she purports to bring a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3).  (*Id.*, ¶ 51.)  She defines her proposed class as:

> All persons who used either a VISA, MasterCard, or Discover debit or credit card, and/or American Express credit card at any of Defendant's locations where Defendant provided an electronically-printed receipt at the point of sale or transaction that displayed the expiration date of that person's credit or debit card or more than the last five digits of that person's credit or debit card for a time period beginning five years prior to the filing of this lawsuit until the date the class is certified.

- 4 -

(*Id.*, ¶ 52.)

## ARGUMENT

## I.    PLAINTIFF DOES NOT SATISFY ARTICLE III'S STANDING REQUIREMENTS.

A party invoking federal jurisdiction bears the burden of establishing standing. *See Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1003 (11th Cir. 2004). That burden includes pleading sufficient factual information to support a finding of Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) "If the litigant cannot demonstrate Article III standing, the court lacks subject matter jurisdiction to review the plaintiff's claims." *Willingham v. Global Payments, Inc.*, 2013 WL 440702, *3 (N.D. Ga. Feb. 5, 2013). As *Lujan* held, "the irreducible constitutional minimum of standing contains three elements": (1) "plaintiff must have suffered an injury in fact"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be likely … that the injury will be redressed by a favorable decision." 504 U.S. at 560-61 (internal quotations and citation omitted); *see also CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006) (quoting *Lujan*); *Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1315 (N.D. Ga. 2012) (quoting *Lujan*); *see generally Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138,

1147 (2013) (reciting the three components of Article III standing). Plaintiff satisfies none of those three requirements here.

### A.   Plaintiff Does Not Plead An "Injury-In-Fact."

For purposes of Article III standing, an injury-in-fact consists of an "invasion of a legally protected interest which is (a) concrete and particularized, as opposed to merely abstract, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560; *see also E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 984 (11th Cir. 1990) ("Plaintiffs in the federal courts must have a personal stake in the outcome of the case, and must allege some threatened or actual injury resulting from the putatively illegal action. Abstract injury is not enough.") (internal quotations and citations omitted). Plaintiff pleads neither an "actual" nor "imminent" injury here.

### 1.   Plaintiff Does Not Allege An "Actual Injury."

In her Complaint, Plaintiff does not allege an "actual" injury, let alone one that is "concrete" and "particularized." She simply alleges that she received a non-compliant receipt on a single occasion at a single WHBM location. She does not allege that she sustained an actual injury at that time, nor does she allege that she has sustained an actual injury in the four months since she received the allegedly non-compliant receipt. Accordingly, the first method of establishing injury-in-fact

– "an actual injury" – is wholly absent. *See Willingham*, 2013 WL 440702, \*6 (Court holding, in data breach case, that plaintiff "has not sufficiently pled an actual injury-in-fact that establishes Article III standing").

> **2.      Plaintiff Does Not Allege A "Concrete" Or "Particularized" Injury That Is "Certainly Impending" Or "Imminent."**
>
> > **a.      Courts Overwhelmingly Have Rejected Arguments That An "Increased Risk Of Identity Theft" Suffices To Establish An Injury-In-Fact.**

In the absence of an actual injury, the only way Plaintiff can satisfy the "injury-in-fact" prong of the Article III standing test is to allege that a "concrete" or "particularized" injury is "imminent" or "certainly impending." Her allegations do not remotely satisfy that standard; indeed, the only potential injury Plaintiff pleads is identity theft, and her allegations are littered with sheer speculation:

- "The publication of more than the last five digits of a credit card or debit card number or an expiration date on consumer receipts increases *the possibility* of identity theft or fraud." (Doc. 1, ¶ 3 (emphasis added).)

- "Multiply this violation by thousands, hundreds of thousands or millions of times and the Defendant has created a *potential* criminal bonanza for identity thieves."  (*Id.*, ¶ 22 (emphasis added).)

- "Defendant willfully failed to comply with FACTA thereby putting all of its customers' financial identities *at risk*."  (*Id.*, ¶ 50 (emphasis added).)

In fact, these watered-down allegations are not even tied to Plaintiff, but instead are "connected" only to an unnamed mass of "customers." That in itself justifies dismissal.

The insurmountable problem for Plaintiff is that she has not alleged that she has been the victim of identity theft or an attempted identity theft, or even that the supposedly non-compliant receipt fell into the hands of any third party; potential identity theft is the only "injury" that is implicated by the Complaint's allegations. In *Clapper*, the Supreme Court's most recent discussion of standing in the privacy context, the Court restated the black-letter concepts of injury-in-fact and held that "allegations of possible future injury" are insufficient to establish standing. *Clapper*, 133 S. Ct. at 1147 (emphasis and quotations omitted). The Court added that to establish Article III standing, "the threatened injury must be *certainly impending* to constitute injury in fact." *Id.* at 1147 (emphasis original; quotations omitted).

In the 30 months since the issuance of the *Clapper* opinion, and relying heavily on the standing principles the Supreme Court articulated in that case, federal courts overwhelmingly have rejected the proposition that an increased risk of identity theft is sufficient to satisfy the injury-in-fact requirement for the purposes of establishing Article III standing. As one court held just three months

ago: "The majority of courts dealing with data-breach cases post-*Clapper* have held that absent allegations of actual identity theft or other fraud, the increased risk of such harm alone is insufficient to satisfy Article III standing."   *In re Zappos.com, Inc.*, ___ F. Supp. 3d ___, 2015 WL 3466943, *4 (D. Nev. June 1, 2015) (citing numerous cases).

This Court should join the many other courts that have held that an increased risk of identity theft is insufficient to establish an injury-in-fact that would confer Article III standing. *See id.*, *8 ("The Court therefore finds that the increased risk of identity theft and fraud stemming from Zappos's security breach does not constitute an injury-in-fact sufficient to confer standing."); *Green v. eBay, Inc.*, 2015 WL 2066531, *5 (E.D. La. May 4, 2015) ("Thus, the potential threat of identity theft or identity fraud, to the extent any exists in this case, does not confer standing on Plaintiff to pursue this action in federal court."); *Storm v. Paytime, Inc.*, ___ F. Supp. 3d ___, 2015 WL 1119724, *5 (M.D. Pa. Mar. 13, 2015) ("Allegations of increased risk of identity theft are insufficient to allege a harm."); *Peters v. St. Joseph Serv. Corp.*, 74 F. Supp. 3d 847, 854 (S.D. Tex. 2015) ("[Plaintiff] argues that the increased risk she faces of future identity theft/fraud constitutes 'imminent' injury.  The Court cannot agree that she faces a 'certainly impending' or 'substantial' risk of identity theft/fraud as Article III requires … .");

*In re SAIC Backup Tape Data Theft Lit.*, 45 F. Supp. 3d 14, 25 (D.D.C. 2014) ("Plaintiffs begin by asserting that an increased risk of harm alone constitutes an injury sufficient to confer standing to sue. … That increased risk, they maintain, in and of itself confers standing. But, as *Clapper* makes clear, that is not true."); *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 876 (N.D. Ill. 2014) ("*Clapper* compels rejection of [plaintiff's] claim that an increased risk of identity theft is sufficient to satisfy the injury-in-fact requirement for standing."); *Galaria v. Nationwide Mut. Ins. Co.*, 998 F. Supp. 2d 646, 654 (S.D. Ohio 2014) ("In this case, an increased risk of identity theft, identity fraud, medical fraud, or phishing is not itself an injury-in-fact because Named Plaintiffs did not allege – or offer facts to make plausible – an allegation that such harm is 'certainly impending.'"); *see also Willingham*, 2013 WL 440702, *7 ("Plaintiffs have not directed the court's attention to, nor has the court found, any precedent for holding that Plaintiffs' allegations, without further evidence of identity theft, are sufficient to establish either an actual or imminent risk of injury-in-fact for Article III standing.").

In short, this case is not meaningfully distinguishable from the numerous privacy-related cases where personal information allegedly was exposed to the public. This Court should follow these overwhelming authorities to hold that the

increased risk of identity theft does not constitute an injury-in-fact sufficient to confer standing under Article III.[1]

> **b.      The Standing Requirements Are Not Lessened Simply Because Plaintiff Has Filed A Proposed Class Action.**

Simply because Plaintiff proposes a class action and alleges that WHBM's purported statutory violation placed "all of its customers' financial identities at risk" (Doc. 1, ¶ 50) does not relieve her of the burden of establishing Article III standing.  Indeed, as the Court has observed, the "foregoing principles apply with equal force in the class action context." *Clark*, 914 F. Supp. 2d at 1315.  As the Court recited in *Clark*, the Supreme Court has held:

> That a suit may be a class action … adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that *they personally have been injured*, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.

*Id.* (emphasis added) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).

---

[1]      Significantly, many of the above-cited cases dismissing claims for lack of standing asserted, among other claims, violations of the FCRA, just as Plaintiff does here. *See Green*, 2015 WL 2066531, *1 (FCRA and other federal and state claims); *Peters*, 74 F. Supp. 3d at 849 (FCRA and "various state and common law claims"); *In re SAIC*, 45 F. Supp. 3d at 21 ("twenty separate causes of action," including FCRA); *Strautins*, 27 F. Supp. 2d at 874 ("willful" and "negligent" violations of FCRA plus common-law theories); *Galaria*, 998 F. Supp. 2d at 649 (FCRA plus common-law claims).

Accordingly, "if none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *Willingham*, 2013 WL 440702, *3 (quoting *O'Shea*). Thus, "a plaintiff cannot include class allegations in a complaint and expect to be relieved of personally meeting the requirements of constitutional standing, even if the persons described in the class definition would have standing themselves to sue." *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) (quotations and citation omitted); *Clark*, 914 F. Supp. 2d at 15-16 (quoting *Dugger*).

In short, Plaintiff cannot avoid dismissal simply by asserting that she proposes a class action that supposedly contains members who, unlike her, perhaps could allege and prove an injury-in-fact sufficient to maintain a lawsuit. Plaintiff's failure to establish her standing to maintain this lawsuit is fatal to the entire class action Complaint. *See Burton v. MAPCO Express, Inc.*, 47 F. Supp. 2d 1279, 1287 (N.D. Ala. 2014) (dismissing FCRA claims in proposed class action, court holding that "Named Plaintiffs do not have statutory standing to bring their FCRA claims because they have not alleged injury arising from the violation of a particular statutory requirement or prohibition set forth in the FCRA") (quoting *Galaria*, 998 F. Supp. 2d at 653).

**B.     Plaintiff's Allegations Do Not Establish The Causal Connection/
Traceability And "Redressability" Requirements Of Article III
Standing.**

Plaintiff's failure to establish the injury-in-fact component of Article III

standing eliminates any need for the Court to examine the "traceability" or

"redressability" elements.   *See Green*, 2015 WL 2066531, n.56 ("Because the

Court finds Plaintiff has not satisfied the injury-in-fact element required for him to

have standing, the Court need not address the traceability or redressability

elements.").   Regardless, Plaintiff does not satisfy the other two components of

Article III standing.

**1.     Plaintiff Does Not Satisfy The "Traceability" Or
"Causation" Requirement.**

"The second element of standing, causation, requires 'a causal connection

between the injury and the conduct complained of.'"   *In re SAIC*, 45 F. Supp. 3d at

31 (quoting *Lujan*, 504 U.S. at 560).   The harm alleged must be "fairly … traceable

to the challenged action of the defendant, and not injury that results from the

independent action of some third party not before the court."   *Id.* (quoting *Simon v.

E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).   Plaintiff's allegations fall

well short of that standard.

Squarely on point is the recent opinion in *Peters*, a class action brought

under the FCRA where the court recited plaintiff's argument that her "injuries are

traceable to the FCRA because they stem from [defendant's] failure to comply with the requirements of the statute. She contends that as a result of this failure, acts of identity theft/fraud were (and continue to be) perpetrated against her, albeit by *unknown third parties*, for which [defendant] should be held responsible." *Peters*, 74 F. Supp. 3d at 857 (emphasis original). Holding that the plaintiff did not satisfy the causation component of standing, the court held that the plaintiff's causation allegation was "conclusory and fails to account for the sufficient break in causation caused by opportunistic third parties. The injuries, to the extent that they meet the first prong [i.e., injury-in-fact] are the result of the independent action of a third party and therefore not cognizable under Article III." *Id.* (quotations omitted). That holding applies with equal force here and provides an independent basis for dismissal.

## 2. Plaintiff's Allegations Do Not Satisfy The Redressability Requirement.

The third and final element of standing, redressability, "requires that it be likely, as opposed to merely speculative, that the alleged injury will be redressed by a favorable decision." *In re SAIC*, 45 F. Supp. 3d at 33 (quoting *Lujan*, 504 U.S. at 561) (additional quotations omitted); *see also Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 75 n.20 (1978) (describing redressability as "a substantial likelihood that the relief requested will redress the injury claimed")

(internal quotations omitted).   Here, as the *In re SAIC* court held, citing the *Clapper* "certainly impending" requirement, "it would be entirely implausible to assume that a massive identity-theft scheme is currently in progress or is certainly impending." *Id*. at 34.   Indeed, Plaintiff's allegations simply speculate on a worst-case scenario (i.e., a rash of identity thefts) that will never occur; in any event, there is no allegation that a single identity theft, or even attempted identity theft, has occurred resulting from WHBM's alleged statutory violation.

Furthermore, Plaintiff's failure to allege any quantifiable loss from WHBM's alleged FACTA violation further defeats a finding of redressability.   In *Peters*, observing that the plaintiff had "not alleged any quantifiable damage or loss she has suffered as a result of" the defendant's alleged violation, the court held that "[e]ven if the above injuries were traceable to [defendant's] alleged failures under the FCRA, it is not likely that a favorable decision from this Court would redress the harm she has experienced."   74 F. Supp. 3d at 857.   That holding equally applies here, and further justifies dismissal of Plaintiff's Complaint.

## II.   ALTERNATIVELY, PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6).

Even if Plaintiff could establish Article III standing, her Complaint should be dismissed pursuant to Rule 12(b)(6).   Earlier this year, another district court

dismissed, at the pleadings stage, a similar FACTA class action complaint filed by the same lead plaintiff's counsel. That ruling should be followed here.

In *Katz v. Donna Karan Int'l Inc.*, 2015 WL 405506 (S.D.N.Y. Jan. 30, 2015), the defendant allegedly violated FACTA by issuing a receipt to the plaintiff listing the first six digits and final four digits of his credit card number. As does the Complaint in this case, the *Katz* complaint, rather than make direct allegations concerning the defendant, merely made general allegations of FACTA's requirements going back several years reinforced only by skeletal allegations specific to the named plaintiff. Accordingly, the *Katz* court observed:

> Plaintiff's complaint alleges facts that permit the Court to plausibly infer two things: (1) that Defendants' [sic] violated FACTA, Am. Compl. ¶¶ 27-35 (describing the unlawful listing of plaintiff's credit card information on his receipt and alleging similar unlawful listings on a class-wide basis); and (2) that Defendants were likely aware of FACTA's requirements, *id.* at ¶¶ 41-55 (describing the FACTA notifications issued to Defendant by credit card companies, governmental agencies, and trade groups).

2015 WL 405506, *1.

Granting the defendants' motion to dismiss, the *Katz* court held that "Plaintiff's complaint is devoid of any well-pleaded facts which allow the plausible inference that Defendants willfully, knowingly, or recklessly violated FACTA." *Id.*, *2. The court acknowledged that "there are sufficient factual allegations to

infer Defendants knew of FACTA applicability," but added that "there are no factual allegations supporting a plausible inference that Defendants knew their conduct violated the truncation requirement, or that Defendants consciously chose to violate FACTA." *Id.*; *see also Crupar-Weinmann v. Paris Baguette Am., Inc.*, 2014 WL 2990110, *4 (S.D.N.Y. June 29, 2014) ("allegations that plausibly suggest that defendant knew about FACTA's requirements[] do not support a plausible inference that defendant knew that it was *violating* FACTA") (emphasis added).

The court concluded that "[a]t most, Plaintiff's well-pleaded facts permit the Court to infer that Defendant negligently violated FACTA." *Id.* But that was not enough in *Katz*, nor is it enough here. The allegations do not rise to the requisite level of willfulness or recklessness required by *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007). As a result, the Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6).

## CONCLUSION

"A statutory violation alone will not suffice to create standing." *Morales v. U.S. Dist. Court for Southern Dist. of Fla.*, 580 Fed. Appx. 881, 887 (11th Cir. 2014). Yet that is all that Plaintiff alleges in her Complaint—a statutory violation by WHBM that did not cause any actual injury to Plaintiff  sufficient to confer

- 17 -

upon her standing to sue under Article III.  Accordingly, Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(1); "[t]his disposition is in line with the vast majority of courts who have reviewed data breach cases where no misuse was alleged post-*Clapper*."  *Storm*, ___ F. Supp. 3d at ___, 2015 WL 1119724, *7. Alternatively, Plaintiff's Complaint does not state a claim or willful FACTA/FCRA violations, rendering the Complaint amenable to dismissal pursuant to Rule 12(b)(6).  For the foregoing reasons, WHBM respectfully requests that the Court grant its motion to dismiss.

Dated:  September 9, 2015.

Respectfully submitted,

/s/ *Barry Goheen*
Barry Goheen (Ga. Bar No. 299203)
KING & SPALDING LLP
1180 Peachtree Street N.E.
Atlanta, Georgia  30309-3521
Tel:  (404) 572-4600
Fax:  (404) 572-5139
Email:  bgoheen@kslaw.com
*Attorneys for Defendant White House Black Market, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that 14-point New Times Roman was used for this

document and that it has been formatted in compliance with Local Rule 5.1.

DATED:  September 9, 2015.

/s/ *Barry Goheen*
Barry Goheen

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a true and correct copy of the

foregoing with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to the following counsel of record:

Shimshon Wexler
Attorney at Law
1411 Dalewood Drive NE
Atlanta, GA  30329
swexleresq@gmail.com

*Attorney for Plaintiff*

DATED:  September 9, 2015.

/s/ *Barry Goheen*
Barry Goheen