IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JILL ALTMAN, individually and on behalf of a class,  :<br>  :<br>    Plaintiff,  :<br>  :<br>    v.  :<br>  :<br>WHITE HOUSE BLACK MARKET, INC. and DOES 1-10,  :<br>  :<br>    Defendants.  : | CIVIL ACTION NO.<br><br>1:15-cv-2451-SCJ |

## ORDER

This matter appears before the Court for consideration of the magistrate judge's May 23, 2016 Final Report and Recommendation ("R&R") (Doc. No. [23]), in which the Honorable Catherine M. Salinas, United States Magistrate Judge recommended that Defendant's Motion to Dismiss Complaint pursuant to Rule 12(b)(1) (Doc. No. [13]) be granted.

The facts and procedural history of this case are set forth in the R&R and are fully incorporated herein.

As stated in the R&R (Doc. No. [23], pp. 1–3), Plaintiff Jill Altman ("Plaintiff") has brought this consumer protection action, individually and on behalf of a class, under the Fair and Accurate Credit Transactions Act ("FACTA")

amendment, 15 U.S.C. § 1681c(g), to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*

The FACTA amendment prohibits a person accepting credit cards or debit cards for the transaction of business from "print[ing] more than the last 5 digits of the card number . . . upon any [electronically printed] receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1).

Plaintiff's complaint alleges that Defendant White House Black Market ("WHBM") violated FACTA, and thus the FCRA, by providing Plaintiff with a credit card receipt at the point of sale at its store in Phipps Plaza in Atlanta, Georgia that contained the first six and last four digits of Plaintiff's credit card number.  Doc. No. [1], ¶¶ 21–22. Plaintiff asserts that the number of digits published on the receipt exceeded the five digits permitted under FACTA. Plaintiff alleges that Defendant WHBM's statutory violation "increases the possibility of identity theft or fraud" and that "Defendant's wanton violation is tantamount to turning over Plaintiff's physical credit card to an identity thief." Id. at ¶¶ 3, 22. Plaintiff alleges "[o]n information and belief" that Defendant WHBM "was providing improperly truncated receipts to their customers at all of their locations." Id. at ¶ 54. Plaintiff further alleges that the violation was

willful because Defendant WHBM persisted in providing improperly truncated printed receipts to customers at its stores despite knowing and repeatedly being informed about FACTA's truncated receipt requirement. Doc. No. [1], ¶ 50.

Plaintiff does not allege actual damages, but seeks to recover statutory damages for willful noncompliance under a provision of the FCRA, 15 U.S.C. § 1681n, which governs liability for FACTA violations. Id. at p. 13.  Said provision states:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000.

15 U.S.C. § 1681n(a)(1)(A).  Plaintiff also seeks punitive damages, attorneys' fees and costs.  Id. at pp. 13–14.

On September 9, 2015, Defendant filed a Motion to Dismiss.  Doc. No. [13]. In its motion to dismiss, Defendant argues that Plaintiff lacks standing to pursue her claims because she has not alleged that she suffered an "injury-in-fact"; Plaintiff merely alleges that the supposed statutory violation gives rise to an increased possibility of identity theft. Defendant argues that Plaintiff's complaint therefore lacks adequate (or any) allegations of an actual or imminent injury

3

sufficient to satisfy Article III's injury-in-fact requirement for standing. Defendant argues that Plaintiff has also failed to satisfy the other two requirements necessary to establish Article III standing; accordingly, Plaintiff's complaint is subject to dismissal pursuant to Rule 12(b)(1). Doc. No. [23], p. 3.[1]

"'Article III of the Constitution confines the judicial power of federal courts to deciding actual 'Cases' or 'Controversies.'" Hollingsworth v. Perry, ---U.S. ----, 133 S. Ct. 2652, 2661 (2013). "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." Warth v. Seldin, 422 U.S. 490, 498 (1975). The United States Supreme Court has "established that the irreducible constitutional minimum of standing contains three elements." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of

---

[1] In the alternative, Defendant argues that dismissal is warranted under Rule 12(b)(6). The magistrate did not address this alternative ground after finding that dismissal was appropriate pursuant to Rule 12(b)(1). Doc. No. [23], p. 9, n.1. The undersigned will address Defendant's alternative ground, *infra*.

4

some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan, 504 U.S. at 560–61. "The party invoking federal jurisdiction bears the burden of establishing these elements." Id. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] 'presum[es] that general allegations embrace those specific facts that are necessary to support the claim.'" Id.

On May 23, 2016, the magistrate recommended that Defendant's Rule 12(b)(1) motion be granted. Doc. No. [23]. A summary of the magistrate's recommendation, which primarily relies on Spokeo, Inc. v. Robins, ---U.S. ----, 136 S. Ct. 1540 (2016) and Clapper v. Amnesty International USA, ---U.S. ----, 133 S. Ct. 1138, 1147 (2013) is as follows:

> In this case, Plaintiff's complaint alleges no more than a bare procedural violation of FACTA, and therefore does not satisfy the demands of Article III. Plaintiff has not adequately alleged "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." A hypothetical increased risk of future identity theft is the only "injury" implicated by the complaint's allegations. Under established Supreme Court precedent, "allegations of possible future injury" are insufficient to establish standing. See Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1147 (2013) (discussing the requirements of Article III standing in the context of government surveillance).

> In sum, Plaintiff has failed to satisfy the requirements of Article III standing. Her complaint fails to allege sufficient (or any) facts from which the Court could infer that Plaintiff suffered a concrete, particularized actual or imminent injury that is "fairly traceable" to the alleged FACTA violation that is likely to be redressable by a favorable ruling.

Doc. No. [23], p. 9.

On June 6, 2016, Plaintiff filed an objection to the R&R, primarily on the ground that the magistrate misread and misapplied the United States Supreme Court's recent decision in Spokeo, 136 S. Ct. 1540. Doc. No. [25].

When an objection is filed, the Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). After conducting this review, the Court "may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Additionally, the Court may "receive further evidence or recommit the matter to the magistrate judge with instructions." Id.

In her objection, Plaintiff argues that the magistrate misread and misapplied Spokeo in two ways: (1) the R&R misreads Spokeo to hold that a violation of a plaintiff's statutory rights under FACTA is not enough, standing

alone, to meet Article III's injury requirement and (2) the R&R fails to recognize that even if Plaintiff must show some form of injury beyond the violation of her FACTA rights, she has done so in multiple ways consistent with Spokeo. Doc. No. [25], p. 2–3.

As to the first objection/alleged misreading of Spokeo, Plaintiff takes issue with the magistrate not referencing the entirety of the Spokeo holding which, as correctly stated by Plaintiff, indicates that "when a plaintiff's claim arises from a violation of a procedural right, the violation alone may or may not be enough to meet the injury requirement for Article III standing, depending on the circumstances." Id. at p. 3 (emphasis omitted). After review, the Court is unable to conclude that the magistrate misread Spokeo, however, to the extent that there was an omission of certain portions of the holding of Spokeo from the R&R, such is cured by this Court's *de novo* review, as this Court has read the entirety of the Spokeo opinion.

Next, Plaintiff argues that it was incorrect for the magistrate to conclude that "Defendant's willful[2] invasion of Plaintiff's legally protected interest under FACTA is insufficient." Id. at p. 7. In support of this argument, Plaintiff cites

---

[2] Whether Plaintiff has plausibly alleged willfulness in her Complaint will be discussed, *infra*, in the Court's discussion of Defendant's alternative Rule 12(b)(6) motion.

7

Justice Clarence Thomas's concurrence in Spokeo for the proposition that "it is well established that a violation of one's private or substantive rights (as opposed to public procedural rights) is enough, standing alone, to meet the injury requirement" of the test for standing. Doc. No. [25], p. 7. Plaintiff also relies upon the following authority: Havens Realty Corp. v. Coleman, 455 U. S. 363, 373–74 (1982) ("As we have previously recognized, [t]he actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing. . . . A tester who has been the object of a misrepresentation made unlawful under § 804(d) [of the Fair Housing Act] has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions. That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d).") (citations and some quotations omitted); Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1330 (11th Cir. 2013) ("the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing."); and Hammer v. Sam's East, Inc., 754 F.3d 492, 498 n.3 (8th Cir. 2014) ("the actual-injury

requirement may be satisfied solely by the invasion of a legal right that Congress created. This is not a novel principle within the law of standing. By enacting [FACTA], Congress gave consumers the legal right to obtain a receipt at the point of sale showing no more than the last five digits of the consumer's credit or debit card number.") (emphasis omitted).[3]

Plaintiff argues that the R&R describes Plaintiff's FACTA rights as merely "procedural" without addressing Havens Realty or Marod Supermarkets — or reconciling Hammer. Doc. No. [25], p. 11. Plaintiff asserts that the R&R does not explain the procedural rights description, cite any authority for it, or give any reasoning for it. Id. According to Plaintiff, "Spokeo, Havens Realty, Marod Supermarkets and Hammer confirm that Plaintiff meets the injury requirement" in that she alleges "an invasion of a legally protected interest" that is particularized and concrete because Defendant willfully violated her substantive right to receive a transaction receipt that reveals no more than the last five digits of her credit card. Doc. No. [25], p. 12.[4] In opposition, Defendant argues that

---

[3] Plaintiff cites Hammer v. Sam's East, Inc., 754 F.3d 492 (8th Cir. 2014) as the only appellate case that addresses Article III standing in the FACTA context; however, this Court has reviewed Hammer with caution, as Hammer was based (in part) on the Ninth Circuit's appellate holding in Robins v. Spokeo, 742 F.3d 409 (9th Cir. 2014), which the Supreme Court held was an incomplete analysis of standing. Spokeo, 136 S. Ct. at 1545.

[4] Plaintiff asserts an additional argument that she meets the injury requirement because "Defendant's willful violation of Plaintiff's FACTA rights give rise to a right of

Plaintiff's "substantive rights" arguments are derived from Justice Thomas's concurring opinion in Spokeo, which did not garner support from the other seven justices. Doc. No. [26], p. 10. Defendant argues that Plaintiff's effort to fault the magistrate for not relying on a single-Justice opinion from Spokeo is entirely misplaced and should be rejected. Doc. No. [26], p. 11. Defendant further argues that the Havens and Marod Supermarkets cases (relied upon by Plaintiff) are not cited in the majority opinion of Spokeo and are "off-point." Doc. No. [26], p. 11.

After review, the Court is unable to uphold Defendant's opposition argument in its entirety, as while the Court agrees that Justice Thomas's concurring opinion is not binding authority, it does offer some guidance as to the injury requirement in the context of an asserted violation of a plaintiff's substantive rights. As correctly noted by Plaintiff, the majority opinion in Spokeo only focused on a violation of one of the FCRA's procedural requirements, as opposed to a substantive right, which Plaintiff alleges in the case *sub judice* (and the Court agrees is at issue here). This Court reached its

---

action for statutory damages." Doc. No. [25], p. 22. In opposition, Defendant argues that this argument was not raised before the magistrate. Doc. No. [26], p.8. After review, the Court will exercise its discretion to consider Plaintiff's argument as it is intertwined with the substantive rights arguments and the Court's ruling on said issue.

conclusion after reviewing persuasive authority, specifically the Eighth Circuit's decision in <u>Hammer</u> 754 F.3d at 498 n.3 ("By enacting [FACTA], Congress gave consumers the legal right to obtain a receipt at the point of sale showing no more than the last five digits of the consumer's credit or debit card number.") (emphasis omitted) and a recent Eleventh Circuit *unpublished*[5] opinion, <u>Church v. Accretive Health, Inc.</u>, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016). The <u>Church</u> case is a post-<u>Spokeo</u> opinion that addresses the standing "injury-in-fact" requirement under the Fair Debt Collection Practices Act (FDCPA).[6]  The Eleventh Circuit thoroughly reviewed <u>Spokeo</u> and cited to <u>Havens</u> for the rule that "[a]n injury-in-fact, as required by Article III, 'may exist

---

[5] Federal Appendix cases are unpublished Eleventh Circuit opinions and are non-binding; however, they may be cited as persuasive authority. <u>United States v. Rivera</u>, 486 F. App'x 40, 42 (11th Cir. 2012).

[6] Additional background information is as follows:

Appellant, Ms. Mahala Church ("Church"), filed a putative class action against Appellee, Accretive Health, Inc. ("Accretive Health") alleging violations of the Fair Debt Collections Practices Act ("FDCPA" or "the Act"). Accretive Health, working for Providence Hospital ("the Hospital"), sent Church a letter advising her that she owed a debt to the Hospital. Church alleges Accretive Health violated the FDCPA by not including in its letter certain disclosures required by the Act. Church does not allege that she suffered actual damages from Accretive Health's failure to include the allegedly required disclosures. Rather, Church simply alleges that upon receiving the letter in question, she "was very angry" and "cried a lot."

<u>Church</u>, 2016 WL 3611543, at *1.

11

solely by virtue of statutes creating legal rights, the invasion of which creates standing . . . .'" Church, 2016 WL 3611543, at *3 (citing Havens, 455 U.S. at 373). In light of the Eleventh Circuit's reference to the Havens case in its new post-Spokeo standing opinion, this Court is unable to conclude that Havens (and Marod Supermarkets which is based on Havens) are "off-point."

The Eleventh Circuit also briefly addressed the interplay of substantive versus procedural rights in Church. The Eleventh Circuit stated that "through the FDCPA, Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures." Church, 2016 WL 3611543, at *3.[7] The Eleventh Circuit further noted that the statement in Spokeo concerning "bare procedural violations" was not applicable to the allegations at hand [in Church], because Congress provided the plaintiff with a "substantive right to receive certain disclosures" and plaintiff [in Church] alleged that defendant violated that substantive right. Similarly, in the case *sub judice*, Congress has provided Plaintiff Altman with a substantive right to receive a truncated credit card

---

[7] "The [FDCPA] requires that debt collectors include certain disclosures in an initial communication with a debtor, or within five days of such communication. See 15 U.S.C. § 1692e(11); 1692g(a)(1)–(5).1 The FDCPA authorizes an aggrieved debtor to file suit for a debt collector's failure to comply with the Act. See 15 U.S.C. § 1692k(a) ("[A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person . . . .")". Church, 2016 WL 3611543, at *3.

receipt. Plaintiff has alleged that Defendant WHBM violated that substantive right by not giving her a truncated receipt. The alleged invasion of Plaintiff's substantive right to a truncated receipt means that Plaintiff "has sufficiently alleged that she has sustained a concrete—*i.e.*, 'real'—injury because she did not receive the allegedly required [truncated receipt]." Church, 2016 WL 3611543, at *3. Furthermore, adopting the language of the Church opinion, this Court finds that:

> The invasion of [Plaintiff's] right to receive the [truncated receipt] is not hypothetical or uncertain; [Plaintiff] did not receive [the receipt] to which she alleges she was entitled. While this injury may not have resulted in tangible economic or physical harm that courts often expect, the Supreme Court has made clear an injury need not be tangible to be concrete. Rather, this injury is one that Congress has elevated to the status of a legally cognizable injury through the [FACTA]. Accordingly, [Plaintiff] has sufficiently alleged that she suffered a concrete injury, and thus, satisfies the injury-in-fact requirement.

Church, 2016 WL 3611543, at *3.

In the next section of her objection, Plaintiff argues that the magistrate fails to recognize that even if Plaintiff must show some form of injury beyond the violation of her FACTA rights, she has done so in multiple ways consistent with Spokeo. Doc. No. [25], p. 2–3. More specifically, Plaintiff states that she has "suffered multiple injuries recognized at common law and by Congressional

determination because Defendant's publication of her credit card information breaches her privacy interests, and exposes her to an unacceptably high risk of identity theft." Doc. No. [25], p. 3.

In opposition, Defendant argues that the breach of privacy interests argument was not raised at the magistrate level. After reviewing the record, inclusive of Plaintiff's opposition brief, Doc. No. [17], the Court agrees that this argument was not presented to the magistrate. The Court hereby exercises its discretion to decline to consider the breach of privacy arguments that were not first presented to the magistrate judge. See Williams v. McNeil, 557 F.3d 1287, 1292 (11th Cir. 2009) (holding that "a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge.").

As for Plaintiff's argument that Defendant put Plaintiff at risk for identity theft, the Court rules as follows. Doc. No. [25], p. 16.[8] According to Plaintiff, "Defendant's willful violation of Plaintiff's FACTA rights exposed Plaintiff to

---

[8] In her objection, Plaintiff acknowledges that her response to Defendant's motion to dismiss suggests that the risk of identity theft is not a basis for Plaintiff's standing. Doc. No. [25], p. 18. Plaintiff attempts to explain away her prior position by stating that she only made that suggestion to emphasize that she should not need to rely on that risk of harm because the statutory violation alone is sufficient. Id. The Court exercises its discretion to now consider the argument.

14

this risk of harm . . . . Defendant published ten digits of her credit card number on its transaction receipt, enabling any potential identity thief who handled or found the receipt access to the information." Doc. No. [25], p. 19. Plaintiff argues that the magistrate's conclusion that "allegations of possible future injury" are not sufficient "is erroneous because it contradicts Spokeo, which reaffirms the rule that a risk of future harm can satisfy the concrete injury requirement." Id. According to Plaintiff, "[t]he point missed by R&R is not whether a risk of harm can meet the injury requirement, but whether the there is a basis for concluding the risk of harm is real." Id. Plaintiff further argues that "here the risk of harm is established by the findings of Congress." Id. at p. 20 (citing S. Rep. No. 108-166, at pp. 3 and 13 (2003)).[9] According to Plaintiff, "[t]he R&R's suggestion

---

[9] The Court has reviewed the Senate Report (pertaining to amending the Fair Credit Report Act) and it appears to the Court that Congress did not see the risk of identity theft as hypothetical. See S. REP. 108-166, 8. ("Millions of Americans have already been victimized by identity theft. . . . .**because so many will become victims despite the best efforts of businesses and law enforcement** . . . .") (emphasis added).

Additional excerpts from the Senate Report are as follows:

The bill contains numerous measures which protect consumers from identity thieves. The legislation requires the truncation of credit and debit card account numbers on electronically printed receipts to prevent criminals from obtaining easy access to such key information. Id. at p. 3.
. . . .
Due to the significant costs to consumers and to the economy, and because of the constant efforts of criminals to find new victims, it is

that a risk of future harm is not enough effectively means a plaintiff's information must actually be used by an identity thief. However, as determined by Congress, once private information is exposed, harm has already occurred regardless of whether that injury is compounded by a resulting credit card fraud." Doc. No. [25], p. 20. Plaintiff states that "exposure to identity theft is itself a form of injury, even if no actual identity theft occurs." Id. Plaintiff further states that Spokeo confirms "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." Id. at p. 21 (citing Spokeo, 194 L. Ed. 2d at 645, quoting Lujan, 504 U.S. at 580 (Kennedy, J., concurring). Plaintiff states that she is "among the persons Congress specifically found to be exposed to a genuine risk of identity theft as a result of the inclusion of too much credit card information on transaction receipts. Accordingly, Congress's determination establishes that

---

> vitally important to address measures which will help prevent identity theft and to punish identity thieves.
> Id. at p. 8.
> . . . .
>
> Section 113. Truncation of credit card and debit card account numbers . . . . The Committee included this provision to limit the number of opportunities for identity thieves to "pick off" key card account information.
>
> S. REP. 108-166, p. 13.

16

Defendant's willful violation of Plaintiff's FACTA rights subjected Plaintiff to an actionable risk of real harm." Doc. No. [25], p. 22.

In opposition, Defendant argues that the magistrate's ruling that allegations of possible future injury are insufficient to establish standing is in line "with the rulings of other federal courts, which overwhelmingly have rejected the proposition that an increased risk of identity theft is sufficient to satisfy the injury-in-fact requirement for purposes of establishing Article III standing." Doc. No. [26], p. 15. Defendant cites a number of non-Eleventh Circuit pre-Spokeo cases and post-Spokeo cases in support of its argument. Id. at pp. 15–16. According to Defendant, "[t]he common thread running through the cases rejecting Article III standing where the plaintiff alleged, as does Plaintiff here, merely the threat of future identity theft is that the purported 'injury' could only materialize based on the random acts of third parties. In other words, '[i]n addition to the speculation of whether future harm from a data security breach will materialize, it cannot be known when such harm will occur.'" Id. at p. 20, n.6[10]

---

[10] In a footnote, Defendant also cited an unpublished Eleventh Circuit opinion in which the Eleventh Circuit stated: "Where future injury depends on either the random or unauthorized acts of a third party, the plaintiff's claim is speculative to satisfy standing requirements." Smith v. Secretary, Dept. of Corrections, 602 Fed. Appx. 466, 469 (11th Cir. 2015) (citing 31 Foster Children v. Bush, 329 F.3d 1255, 1266 (11th Cir. 2003)). Doc. No. [26], p. 20, n.6.

After review, the Court is unable to uphold Defendant's argument and as stated above, finds that the first element of Constitutional standing is satisfied in that here, Plaintiff has sufficiently alleged in her Complaint that she suffered an injury in fact—an invasion of a legally protected interest which is concrete and particularized, and actual or imminent, not conjectural or hypothetical. The Court finds that the fallacy of Defendant's argument is that it does not address the role of Congressional findings.

As one court has stated, "Spokeo instructs to look to the common law and to the judgment of Congress, as reflected in the FCRA to determine whether the violations of that statute [alleged by a plaintiff] constitute concrete injuries that satisfy the case or controversy requirement." Thomas v. FTS USA, LLC, No. 3:13-cv-825, 2016 U.S. Dist. LEXIS 85545 at * 17 (E.D. Va. 2016).

In addition, the recent Eleventh Circuit opinion notes,

> In its analysis [in Spokeo], the Supreme Court explained that "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." Spokeo, 136 S. Ct. at 1547–48." "[T]he Court also noted that an injury need not be tangible to be concrete and reiterated that "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'" Id. at 1549 (quoting Lujan, 504 U.S. at 578). . . . . An injury-in-fact, as required by Article III, "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing. . . ."

> Havens Realty Corp. v. Coleman, 455 U.S. 363, 373 (1982); see also Palm Beach Golf Ctr.-Boca, Inc. v. Sarris, D.D.S., P.A., 781 F.3d 1245, 1251 (11th Cir. 2015) (stating same).

Church, 2016 WL 361543 at * 3.

In addition, while the Court recognizes the Clapper case relied on by the magistrate, as well as the numerous non-binding cases cited by Defendant, the Court is unable to conclude that those cases govern in the case *sub judice*, because of the Congressional creation of a right and injury, as well as the language of the Senate Report which indicates that Congress did not find the risk of identity theft to be speculative.

As to the remaining elements of Constitutional standing, the Court finds that the alleged statutory violation of the FCRA is traceable to Defendant's conduct and that the alleged violation is redressable by statutory damages.[11]

Lastly, the Court will consider the alternative Rule 12(b)(6) ground of Defendant's motion. Doc. No. [13-1], p. 15. In its motion, Defendant urged the

---

[11] According to Defendant, "Plaintiff does not object to the Magistrate's recommendations concerning the other two elements necessary for standing — traceability and redressability — and, therefore, any objections on these findings are waived and, consequently, support dismissal." Doc. No. [26], p. 9, n.1. The Court declines to uphold this argument as a *de novo* review of the first element of standing that rejects the magistrate's R&R, logically prompts the district court to review the remaining two elements of standing to properly determine the Court's jurisdiction. See DiMaio v. Democratic Nat'l Comm., 520 F.3d 1299, 1301 (11th Cir. 2008) ("standing is a threshold jurisdictional question . . . .") (citations and internal quotations omitted).

Court to follow the district court's ruling in Katz v. Donna Karen Int'l Inc., No. 14 Civ. 740 2015 WL 405506 (S.D. N.Y. Jan. 30, 2015).  On June 30, 2016, the Second Circuit Court of Appeals vacated and remanded the Katz case in light of Spokeo.  In light of the Second Circuit's ruling, this Court will give no further consideration to the Katz case. Defendant's Rule 12(b)(6) motion is **DENIED**.

## CONCLUSION

After *de novo* review, the magistrate's R&R (Doc. No. [23]) is hereby **REJECTED**.

Plaintiff's objections (Doc. No. [25]) are hereby **SUSTAINED**.

Defendant's Motion to Dismiss (Doc. No. [13]) is hereby **DENIED**.

Plaintiff's Motion for Leave to File Notice of Supplemental Authority (Doc. No. [27]) is hereby **DEEMED MOOT** as the Court was able to find post-Spokeo authority in its own independent research.

**IT IS SO ORDERED,** this 13th day of July, 2016.

                                      s/Steve C. Jones
                                      HONORABLE STEVE C. JONES
                                      UNITED STATES DISTRICT JUDGE