## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| JILL ALTMAN, individually, and on behalf of a class, ) ) ) | |
| Plaintiff, ) | Civil Action No. 1:15-cv-2451-SCJ-CMS |
| ) | |
| v. ) ) | |
| WHITE HOUSE BLACK MARKET, INC., and DOES 1-10, ) ) ) | |
| Defendant. ) ) | |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff, Jill Altman, submits this memorandum of law in support of her motion for class certification. For the reasons below, Plaintiff respectfully requests that this Court enter an order certifying this case as a class action.

## I.    Introduction.

This case is ideal for class certification. Numerous courts in this Circuit have certified similar Fair and Accurate Credit Transactions Act ("FACTA") cases, including in contested class certification proceedings. *See*, *e.g.*, *Legg v. Spirit Airlines, Inc.*, 315 F.R.D. 383 (S.D. Fla. 2015). Similar to *Legg*, here the proposed class has hundreds of thousands of people with the same relatively small claim for statutory damages, each person's claim raises the same material issues, the case covers a manageable several-month time period, and there is no difficulty ascertaining the class because the transaction details and credit card information were recorded for each transaction at issue, along with most class members' names and addresses.

Also, as in *Legg*, this case arose because White House Black Market, Inc. ("WHBM"), repeatedly committed the same violation of the same anti-identity theft provision of FACTA. Specifically, even though WHBM was aware of FACTA's requirements long before this lawsuit, WHBM allowed its electronic credit card processing equipment to systematically print transaction receipts that disclose <u>ten</u> digits, *i.e.*, most, of its customers' credit and debit card account numbers in violation

of FACTA's express prohibition. Moreover, WHBM did not stop violating FACTA until Plaintiff brought this action.

In addition to stopping this practice, Plaintiff brought this lawsuit to deter future violations and enforce Plaintiff's and the proposed class members' rights. To that end, Plaintiff seeks an order certifying a class of individuals for whom, like her, WHBM printed a point-of-sale credit or debit card receipt that disclosed the first six and last four digits of the individual's credit or debit card account number. The proposed class easily meets the requirements for class certification set by Federal Rule of Civil Procedure 23. Accordingly, this motion should be granted.

## II.   The Law and Facts at Issue.

### A.   FACTA's "Truncation" Requirement.

FACTA was passed by Congress and signed into law by President George W. Bush in 2003. *Creative Hospitality Ventures v. U.S. Liab. Ins. Co.*, 655 F.Supp.2d 1316, 1333 (S.D. Fla. Sept. 1, 2009). One of FACTA's primary purposes is to reduce the risk of identity theft. *Redman v. Radioshack Corp.*, 768 F.3d 622, 639 (7th Cir. 2014) ("identity theft is a serious problem, and FACTA is a serious congressional effort to combat it."). Another primary purpose is the protection of the privacy of cardholder account information. *Creative Hospitality Ventures*, 655 F.Supp.2d at 1333-34.

The importance of FACTA's purposes is highlighted by recent studies that suggest that "[w]hen people pay in person, **42 percent use debit cards and 38 percent**

**use credit cards**, while only 17 percent use cash and 3 percent use checks."[1] Furthermore, as indicated by the 2013 Federal Reserve Payments Study, non-cash payments are on the rise as "payments have become increasingly card-based -- with the number of debit card payments rising more than any other payment system between 2009 and 2012."[2]

To achieve its goals, FACTA requires merchants to redact certain information on debit and credit card transaction receipts that an identity thief could otherwise find and use; namely, the card expiration date and most of the card account number. *Redman*, 768 F.3d at 626 ("the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information..."). Specifically, FACTA states:

> (g) Truncation of credit card and debit card numbers
>
> (1) In general. Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print **more than the last 5 digits of the card number** or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

15 U.S.C. §1681c(g)(1) (emphasis added). This provision is commonly known as the

---

[1] "Credit Cards are the Preferred Payment Method: Survey", http://nypost.com/2015/07/12/credit-cards-are-the-preferred-payment-method-survey/ (Last accessed: May 8, 2017) (emphasis added).

[2] "Are Cash Transactions Becoming Extinct?" http://www.cbsnews.com/news/are-cash-transactions-becoming-extinct/ (Last Accessed: May 8, 2017).

"truncation requirement."

Given the simplicity of this requirement, as well as the inherent commonality of claims that arise when a merchant violates it on a systematic basis (like here), and the relatively small potential damages available to each class member, FACTA truncation cases are commonly certified for class treatment. *See, e.g., Bush v. Calloway Consol. Group River City, Inc.*, No. 10-cv-841, 2012 U.S. Dist. LEXIS 40450 at *33 (M.D. Fla. Mar. 26, 2012) ("Courts routinely find class resolution superior in consumer protection actions, including those brought pursuant to FACTA.") (citing cases); *In re Toys "R" Us – Delaware, Inc. – Fair and Accurate Credit Trans. Act (FACTA) Litig.*, 300 F.R.D. 347, 376 (C.D. Cal. 2013) ("The vast majority of courts outside this district have similarly found that common questions predominate in FACTA class actions.") (citing cases).[3]

Indeed, numerous courts in this Circuit have recently certified FACTA cases for class resolution in contested proceedings as well as in settlements. *See Legg v. Spirit Airlines, Inc.*, 315 F.R.D. 383, 387 (S.D. Fla. 2015) (contested); *Legg v. Lab. Corp. of Am.*

---

[3] Examples of the numerous decisions ruling that class certification is proper in FACTA truncation cases include *Velasco v. Sogro, Inc.*, No. 08 C 244, 2014 U.S. Dist. LEXIS 104047 at *11-*12 (E.D. Wisc. July 29, 2014); *Rogers v. Khatra Petro, Inc.*, 08-cv-294, 2010 U.S. Dist. LEXIS 103599 at *2 (N.D. Ind. Sept. 29, 2010); *Miller-Huggins v. Mario's Butcher Shop, Inc.*, No. 09-3774, 2010 U.S. Dist. LEXIS 16493 at *14 (N.D. Ill. Feb. 22, 2010); *Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 259 F.R.D. 151, 161 (N.D. Ill. 2009); *Harris v. Best Buy Co., Inc.*, 254 F.R.D. 82, 90 (N.D. Ill. 2008); *Redmon v. Uncle Julio's of Illinois, Inc.*, 249 F.R.D. 290, 293 (N.D. Ill. 2008); *Meehan v. Buffalo Wild Wings, Inc.*, 249 F.R.D. 284, 288 (N.D. Ill. 2008); and *Matthews v. United Retail, Inc.*, 248 F.R.D. 210, 217 (N.D. Ill. 2008).

*Holdings*, 2016 U.S. Dist. LEXIS 122695 (S.D. Fla. Feb. 18, 2016) (settlement); *Kirchein v. Pet Supermarket, Inc.*, 16-cv-60090, Doc. 31 at pp. 2-4 (S.D. Fla. Aug. 22, 2016) (settlement, final approval pending); *Muransky v. Godiva Chocolatier, Inc.*, 2016 U.S. Dist. LEXIS 133695 (S.D. Fla. Sept. 28, 2016) (settlement, on appeal); *Guarisma v. Microsoft, Inc.*, 15-cv-24326, Doc. 57 at pp. 2-3 (S.D. Fla. Feb. 28, 2017) (settlement, final approval pending); *Flaum v. Doctor's Associates, Inc.*, 16-cv-61198, Doc. 83, pp. 2-3 (S.D. Fla. Mar. 23, 2017) (settlement, final approval pending).

## B.   The Truncation Requirement Is Well-Established.

WHBM had years to learn about and comply with the truncation requirement before it went into effect. Although FACTA was enacted in 2003, merchants were not obligated to start meeting the truncation requirement until December 4, 2006. 15 U.S.C. §1681c(g)(3).

Moreover, the truncation requirement was highly publicized long before its effective date.[4] Thereafter, VISA, MasterCard and American Express began to

---

[4] For example, on March 6, 2003, the CEO of Visa USA announced "an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether…." (Exhibit 1 (*PR Newswire*, "Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein" at p. 1 (March 6, 2003)).

contractually require merchants to comply with the truncation requirement. (Doc. 1, ¶28).[5]

The truncation requirement made news again in 2008, after numerous merchants were sued for violating the "expiration date" element of the requirement. *See Bateman v. Am. Multi-Cinema*, 623 F.3d 708, 717 (9th Cir. 2010). Congress addressed this situation by passing a "Clarification Act" to absolve violations of the expiration date truncation requirement that had occurred before June 3, 2008. *Id.* Importantly, however, the Clarification Act did *not* absolve any violation of the card account-number truncation requirement. Thereafter, card-processing companies continued to alert merchants about the truncation requirement.[6]

Finally, to incentivize merchants to learn about and comply with FACTA, and encourage private litigants to enforce it, Congress gave the law teeth. Specifically, Congress incorporated FACTA into the Fair Credit Reporting Act, 15 U.S.C. §1681, *et*

---

[5] For example, MasterCard stated that: "Effective April 5, 2005, cardholder receipts … must reflect only the last four digits of the primary account number (PAN))." (Exhibit 2 ("Does Your Terminal Make the Cut?") at p. 2). Likewise, the August 12, 2006 edition of "Rules for Visa Merchants" expressly provided that "only the last four digits of an account number should be printed on the customer's copy of the receipt." (Doc. 1 (Complaint) at ¶28; and *see* Exhibit 3 ("Rules for Visa Merchants" Excerpt) at p. 62).

[6] For example, a 2010 Visa Best Practices alert stated "Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN … on any cardholder receipt." (Exhibit 4 at p. 1).

*seq.* ("FCRA"), which entitles a successful plaintiff to statutory damages and punitive damages for any "willful" conduct that violates the law. *See Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306-1307 (11th Cir. 2009), *citing* 15 U.S.C. §1681n(a)(1)(A), and (2). A "willful" violation is simply one that is either knowing or reckless, such as when a defendant violates FACTA despite its awareness of FACTA's unambiguous requirements. *See Harris*, 564 F.3d at 1310, *citing Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 59-60 (2007) (an FCRA violation is "willful" if it is knowing or reckless); and *see Tchoboian v. FedEx Office & Print Servs.*, 2011 U.S. Dist. LEXIS 158776 at *3 (C.D. Cal. Nov. 14, 2011) ("FACTA clearly prohibits the printing of 'more than the last 5 digits of the card number....'"); *Buechler v. Keyco, Inc.*, 2010 U.S. Dist. LEXIS 40197 at *8 (D. Md. Apr. 22, 2010) (§1681c(g)(1) "is unambiguous.").

### C.   WHBM Was Well Aware of FACTA's Requirements.

In addition to years of widespread publicity about FACTA's truncation requirement, WHBM was made well aware of it long before this lawsuit. Specifically, "WHBM admits that, before May 16, 2010, it knew of, was made aware of or was advised about FACTA's prohibition against printing more than five (5) digits of a customer's primary account number of a debit or credit card on their receipts…" (Exhibit 5 (WHBM Supp. Resp. to Requests for Admissions) at pp. 21-22 (Request 49)). Indeed, WHBM claims (but has yet to show) ████████████████████████

████████████████████████████████████████████ (Exhibit 6

(WHBM 2nd Supp. Resp. to Interrogs.) at p. 6 (Interrog. 5)).

**D.    WHBM Subjected Plaintiff and the Proposed Class to a Pattern of Identical Violations of FACTA's Truncation Requirement.**

Despite its awareness of FACTA, WHBM systematically violated FACTA on a widespread basis in the same manner for Plaintiff and the class. On March 23, 2015, WHBM began implementing a payment processing system at its U.S. stores, ██████

█████████████████████████████████████████████████████████████

████████████. (*See* Exhibit <u>6</u> at p. 7 (Interrog. 5)).[7] ████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████. (*See id.*; *see also* Exhibit <u>5</u> at pp. 19-20 (Request 43) (system programmed to print more than five digits of card account number on receipts)).[8]

Furthermore, and despite its alleged policy of complying with FACTA, WHBM did not █████████████████████████████████████████████████████████

████████████████████████████████████████████████████. Instead,

_____

[7] ███████████████████████████████████████████████████████ (*Id.*).

[8] The first six digits are especially useful to identity thieves because they are the "Bank Identification Number" or "BIN." There are several Web sites where one can learn the bank that issued a credit card using the first six digits of the card number. *See, e.g.*, https://www.exactbins.com/bin-lookup (last visited May 9, 2017).

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████. (Exhibit <u>7</u> (WHBM Suppl.

Resp. to Interrogs.) at p. 6 (Interrog. 4).[9] ████████████████████████

█████████████████████████████. (Exhibit <u>6</u> at p. 8 (Interrog. 5) ("███

██████████████████████████████████████████████████████

████████████████████…")). █████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████. (Exhibit <u>7</u> at p. 6

(Interrog. 4) ("████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████.")).

Plaintiff is one of many such customers. When she made a purchase with her

American Express card at WHBM's Phipps Plaza location in Atlanta on May 16, 2015,

---

[9] The spreadsheets WHBM produced to identify the transactions at issue identify the affected stores by store number, ███████████████ (*See* Exhibit <u>6</u> at p. 5 (Interrog. 3) and, *e.g.*, Exhibit <u>8</u> (Transaction Spreadsheet Excerpt) at p. 1).

she received an electronically-printed receipt that revealed the first six and last four digits of her card account number. (Exhibit 9 (Altman Dep.) at 44:23-45:4, 60:4-15).

WHBM allowed its U.S. stores to print more than ███████ such receipts. (Exhibit 6 at p. 5 (Interrog. 3)). Accordingly, Plaintiff seeks certification of the following class:

> (i) All individuals in the U.S. whose debit or credit card, according to WHBM's records, (ii) was used in a transaction at a WHBM U.S. store operating the CHARM system (iii) that was programmed to print the first six and last four digits of the debit or credit card account number on the customer transaction receipt printed at the point of sale for the transaction, (vi) between March 23, 2015 and July 17, 2015.[10]

As explained below, the straightforward elements of this case easily meet the requirements for class certification under Federal Rule 23.

## III.   The Class Meets All of the Requirements for Class Certification.

Class certification is a matter for the Court's discretion. *DeLeon-Granados v. Eller & Sons Trees, Inc.*, 497 F.3d 1214, 1218 (11th Cir. 2007). The class should be certified if it is "ascertainable," and if the class it meets the four requirements of Rule 23(a), and at least one subsection of Rule 23(b). *See Carriuolo v. G.M. Co.*, 823 F.3d 977, 984-85 (11th Cir. 2016), citing Fed. R. Civ. P. 23.

---

[10] Plaintiff respectfully reserves the right to amend the putative class definition subject to the Court's approval. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). "[I]t is well-recognized that '[t]he act of refining a class definition is a natural outcome of federal class action practice.'" *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2009 U.S. Dist. LEXIS 30937 at *63 (N.D. Ga. Feb. 9, 2009), *quoting In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 683 (N.D. Ga. 1991).

Ascertaining the class is simple here because membership is based on objective criteria (electronically-recorded store transaction data), and requires no significant individual inquiry. *See Legg*, 315 F.R.D. at 388 ("[Defendant's] responses to [Plaintiff's] discovery requests indicate that its records will identify those to whom [Defendant] issued the offending receipts."). Indeed, ███████████████████████████ ████████████████████████████████████████████. (Exhibit 6 at p. 5 (Interrog. 3) and Exhibit 8 (Transaction Spreadsheet Excerpt)).[11]

The four requirements of Rule 23(a) are: (i) the class is so numerous that joinder of all members would be impracticable (numerosity); (ii) the class members' claims present common questions of law <u>or</u> fact (commonality); (iii) Plaintiff's claim is typical of the class members' claims (typicality); and (iv) Plaintiff and his counsel are adequate representatives of the class (adequacy). *See* Fed. R. Civ. P. 23(a); *DeLeon-Granados*, 497 F.3d at 1220.

The subsection of Rule 23(b) at issue here is (b)(3). It requires: (i) that the common questions of law or fact "predominate" over any questions that affect only

---

[11] Even if WHBM did not already have class member name and contact information, that information is easily obtained from the banks that issued the credit cards used in the class members transactions, as it was in the *Spirit*, *Kirchein* and *Muransky* FACTA class actions referenced above. The actual customer names and contact information in Exhibit 8 have been redacted for privacy purposes pursuant to N.D. Ga. Standing Order No. 16-01, Exh. A (Admin. Proc. for Civil Cases), §II, ¶I(2).

individual class members, and (ii) that a class action is a superior method for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3); *DeLeon-Granados*, 497 F.3d at 1220.

As explained below, the class meets each of the foregoing requirements.[12] Accordingly, Plaintiff is entitled to class certification. *See Shady Grove Orthopedics Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule *entitling* a plaintiff whose suit meets the specified criteria to pursue his claim as a class action.") (brackets and italics added).

### A.     The Class Meets the Numerosity Requirement – Rule 23(a)(1).

The test for numerosity is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no established threshold figure for determining whether a proposed class satisfies the numerosity requirement," although classes with more than 40 members are treated as presumptively sufficient. *Thomas County Branch of NAACP v. City of Thomasville Sch. Dist.*, 187 F.R.D. 690, 696 (M.D. Ga. 1999), *citing Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986), *cert. denied.* 479 U.S. 883 (1986). Moreover, "a plaintiff need

---

[12] The class certification decision is generally made apart from deciding the merits. "[A] court should not determine the merits of a claim at the class certification stage…" *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1358 (11th Cir. 2009). Instead, courts should only consider the merits "to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Id., quoting Heffner v. BSBC of Ala., Inc.*, 443 F.3d 1330, 1337 (11th Cir. 2006).

not show the precise number of members in the class." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983); *see also City of Rome v. Hotels.com*, 2011 U.S. Dist. LEXIS 158580 at *37 (N.D. Ga. Mar. 21, 2011) (need only "proffer some evidence or reasonable estimate of the number of members" in the class) (citation omitted).

The proposed class here easily clears this low hurdle. In response to Plaintiff's request that WHBM identify each transaction in which it printed a transaction receipt revealing the first six and last four digits of the card used in the transaction, WHBM produced spreadsheets that ███████████████████████████████████ ████████████████████ (*See* Exhibit 6 at p. 5 (Interrog. 3) and, *e.g.*, Exhibit 8 (Transaction Spreadsheet Excerpt)).[13]

Plainly, it would be impracticable to join ████████████████████████ ██████████████ as party plaintiffs. *See*, *e.g.*, *City of Rome*, 2011 U.S. Dist. LEXIS 158580 at *47 (259 class members sufficiently numerous). Accordingly, the numerosity requirement is met.

### B.    The Class Meets the Commonality Requirement – Rule 23(a)(2).

The test for commonality is whether the class claims present "questions of law *or* fact common to the class." Fed. R. Civ. P. 23(a)(2) (emphasis added). This is another

---

[13] The transaction spreadsheets WHBM produced include █████████████████ ███████████████████████████████ (*See* Exhibit 6 at p. 5 (Interrog. 3)). There are about █████████████████████████ in the spreadsheets. The rest of the transactions in the spreadsheets ████████████. (*Id.*).

"low hurdle." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009). To clear it, Plaintiff need only show the class claims present "at least one issue whose resolution will affect all or a significant number of the putative class members," or that their claims "are susceptible to class-wide proof." *Id.* at 1355, *quoting Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001); *see also Legg*, 315 F.R.D. at 389 (same), citing *Williams*, 568 F.3d at 1355.

That is plainly the case here. The class claims present at least two issues that affect each class member: (a) whether the receipts WHBM's system printed for class members violated FACTA's card account number truncation requirement, and (b) whether WHBM acted willfully, so that the class members may recover statutory and punitive damages. *See* 15 U.S.C. §1681c(g)(1) and §1681n(a).

These issues are also perfectly suited to class-wide proof. For example, the common evidence as to the functioning of WHBM's CHARM system will prove ███ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████. This includes WHBM's explanation that the ████████████████████████████████████ ████████████████████████████████████. (Exhibit 5 at pp.19-20 (Request 43); Exhibit 6 at pp. 7-8 (Interrog. 5), Exhibit 7 at 6 (Interrog. 4)).

Likewise, the common evidence demonstrating WHBM's awareness of its FACTA obligations and the printed transaction receipts that revealed the violations

will go to establish that WHBM's actions were "knowing" or "reckless," and therefore willful. *See Harris*, 564 F.3d at 1310, *citing Safeco*, 551 U.S. at 59-60 (violation is "willful" if it is knowing or reckless); *see also Redman*, 768 F.3d at 638 (finding issue of willfulness in FACTA lawsuit "straightforward"). This includes WHBM's awareness that

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████. (Exhibit <u>6</u> at p. 7 (Interrog. 5)).[14] Accordingly, the commonality requirement is met. *See Legg*, 315 F.R.D. at 389; *see also Bush*, 2012 U.S. Dist. LEXIS 40450 at *21 ("courts considering whether to certify a FACTA class action on facts similar to those presented here have routinely found commonality.").

## C.   Plaintiff's Claims Are Typical of the Class's Claims – Rule 23(a)(3).

The typicality element of Rule 23 simply requires that Plaintiff's and the class members' claims "arise from the same event or pattern or practice and [be] based on the same legal theory." *Williams*, 568 F.3d at 1356-57 (brackets added), *quoting Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216-17 (11th Cir. 2012).

---

[14] WHBM seeks to ████████████████████████████████████████████████████ ███████████████████████████████████████████████████ (*see* Exhibit <u>6</u> at p. 8 (Interrog. 5), ███████████████████████████████ (see *Id.* at p. 5 (Interrog. 3)), and yet WHBM nevertheless decided to use the system in ████████████ ███████████████████████████ despite how it was operating.

That is the case here because Plaintiff and the proposed class were subjected to the same conduct, and their claims present the same legal theory. They were subjected to the same conduct because ███████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████. Likewise, their shared legal theory is that these receipts violate FACTA's truncation requirement. "On this basis alone courts have found typicality exists." *Bush*, 2012 U.S. Dist. LEXIS 40450 at *25, *citing Shurland*, 259 F.R.D. at 159; *Legg,* 315 F.R.D. at 389 ("[Plaintiff]'s claims are typical of those of the proposed class. [Plaintiff]'s and the class members' claims both arise from [Defendant]'s practice of inadequately truncating customers' credit and debit card numbers on those customers' receipts.") (brackets added). Accordingly, the typicality element is met.

### D. Plaintiff and Her Counsel Are Adequate Representatives – Rule 23(a)(4).

The adequacy element of Rule 23(a)(4) requires that Plaintiff and her counsel be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This means there must be no "fundamental" conflict of interest between Plaintiff and the class concerning the "specific issues in controversy." *Carriuolo*, 823 F.3d at 989 ("[A] party's claim to representative status is defeated only if the conflict between the

representative and the class is a fundamental one, going to the specific issues in controversy.") (citation omitted).

Plaintiff meets this test because her interests are squarely aligned with the class. Like the class members, she claims WHBM violated her rights under FACTA by printing a card transaction receipt that reveals the first six and last four digits of her card account number, that WHBM acted willfully (*i.e.* knowingly or recklessly), and thus that WHBM is liable for statutory and punitive damages. (Exhibit 9 (Altman Dep.) at 60:4-61:10, 109:9-13, 111:17-21). Moreover, Plaintiff understands she has a duty to the class members, that WHBM's conduct subjected the class members to the same risks as her, and the relief she seeks for the class. (*Id.* at 110:5-20, 113:18-21, 114:24-115:4, 139:8-17, 140:7-141:3, 151:15-22). Finally, Plaintiff has no interests antagonistic to the class, let alone a "fundamental one, going to the specific issues in controversy." *Carriuolo*, 823 F.3d at 989.

Plaintiff's attorneys are also adequate. *Melanie K. v. Horton*, 2015 U.S. Dist. LEXIS 36062 at *12 (N.D. Ga. Mar. 23, 2015) ("The adequate representation requirement involves questions of whether plaintiffs' counsel are qualified, experienced and generally able to conduct the proposed litigation…"), *quoting Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985). Plaintiff's counsel are amply qualified, experienced and able to prosecute this case because they have decades of class action experience, ample resources, and include lawyers who have been appointed class counsel in multiple

FACTA cases, including five nationwide FACTA class actions certified in this Circuit alone, four of which resulted in the largest all cash non-reversionary settlements in FACTA history.[15] (Exhibit 10 (Declaration of Keith Keogh) at ¶2-¶10, ¶19-¶20; *see also Flaum*, 16-cv-61198, Doc. 83, p.3, ¶6 ("In accordance with Fed. R. Civ. P. 23(g), the Court determines that Plaintiff's counsel, … Keith J. Keogh, Michael S. Hilicki, … are adequate to represent the Class and appoints them Class Counsel."); *Guarisma*, 15-cv-24326, Doc. 57, p.3, ¶5 (same); *Legg v. Lab.*, 14-cv-61543, Doc. 210, p.3 ("this Court recognizes the experience of Class Counsel Michael Hilicki … and finds under FED. R. CIV. P. 23(g) that the requirement for adequate representation of the Settlement Class has been fully met."); *Legg v. Spirit*, 315 F.R.D. at 390 ("Plaintiff's attorneys are experienced and capable, and have served as class counsel in similar consumer class actions before."); *Muransky*, 2016 U.S. Dist. LEXIS 133695 at *7 ("Class Counsel effectively pursued the Settlement Class Members' claims before this Court"); *see also* Exhibit 11 (Lamer Declaration) at ¶6; *Katz v. ABP Corporation,* 12-cv-04173, Doc. 77 (finding Bryant T. Lamer meets the requirements of Fed. R. Civ. P. 23(g) and appointing him as one of class counsel); and Exhibit 12 (Holcombe Declaration) at ¶13-¶20). This extensive class action experience and track record for achieving strong

---

[15] *See Flaum*, 16-cv-61198, Doc. 82 ($30.9 million) (final approval pending); *Legg v. Lab.*, 2016 U.S. Dist. LEXIS 122695 ($11 million); *Legg v. Spirit*, 2016 U.S. Dist. LEXIS 185397 ($7.5 million); *Muransky*, 2016 U.S. Dist. LEXIS 126810 ($6.3 million) (on appeal).

results in FACTA class cases confirms Counsel's adequacy. *See, e.g., Jones v. Advanced Bureau of Collections, LLP*, 317 F.R.D. 284, 293 (M.D. Ga. 2016) ("it is apparent from counsels' ability to manage similar suits in the past that they have the expertise and adequate resources to manage this lawsuit as well."). In sum, the adequacy requirement is met.

### E.      The Class Meets the Requirements of Rule 23(b)(3).

Once the elements of Rule 23(a) are met, the class need only meet one of the three subsections of Rule 23(b). *Carriuolo*, 823 F.3d at 984. Here, the class should be certified under subsection (b)(3), which provides that class certification is appropriate when "the questions of law *or* fact common to class members predominate over any questions affecting only individual members," and if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* at 985, *quoting* Fed. R. Civ. P. 23(b)(3) (emphasis added). As shown below, this case easily meets both requirements.

### 1.  Common Question of Law or Fact Predominate.

Common issues of law or fact predominate "if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to … relief." *Carriuolo*, 823 F.3d at 985 (citation omitted)); *see also Legg*, 315

F.R.D. at 391 (same, in a FACTA case).[16] That is the case here because the common questions this case presents, which are listed in the discussion of Rule 23(a)(2)'s "commonality" element above, directly affect the class members' ability to establish liability and obtain relief.

Specifically, the issue of whether WHBM violated FACTA by systematically printing credit and debit card receipts that reveal ten digits of purchasers' card account numbers directly impacts each class member's ability to establish liability because a "yes" to that question resolves the liability issue. *See* 15 U.S.C. §1681c(g); *see also Legg*, 315 F.R.D. at 391 ("Plaintiff argues that he satisfies Rule 23(b)(3)'s predominance requirement because all the putative class members' claims stem from the same programing error ... The court agrees that these central issues predominate..."); and *Rogers*, 2010 U.S. Dist. LEXIS 103599 at *15 ("one common legal issue predominates in this case — whether the receipts printed by Defendant violate 15 U.S.C. §1681c(g).").

---

[16] Note, Rule 23(b)(3) does not require all issues to be common. It only requires that common issues predominate over any individual issues. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004) ("it is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions."), quoting *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 687, 697 (N.D. Ga. 2002); *see also Carriuolo*, 823 F.3d at 988 ("Nothing in this Rule requires plaintiffs to prove predominance separately as to both liability and damages.").

Likewise, the question of whether WHBM acted willfully directly impacts each class member's right to relief because the complaint only seeks statutory and punitive damages, and that relief is only available if WHBM acted willfully. 15 U.S.C. §1681n(a); *see also Bush*, 2012 U.S. Dist. LEXIS 40450 at *32 ("whether Calloway's noncompliance with FACTA was 'willful' applies to all class members' claims."), *citing Shurland*, 259 F.R.D. at 159 (same).

By contrast, this case does not raise any significant individual issues among class members, let alone any so material that they could predominate over the common questions.[17] Thus, as is typical in FACTA cases, this case easily meets the predominance requirement. *See In re Toys "R" Us – Delaware, Inc. – Fair and Accurate Credit Trans. Act (FACTA) Litig.*, 300 F.R.D. at 376 ("The vast majority of courts outside this district have similarly found that common questions predominate in FACTA class actions.") (citing cases).

---

[17] Some defendants have argued FACTA cases present individual questions about whether the class members used a "business" credit card. This is a non-issue because the elements of a FACTA do not enquire as to the nature of the card used. *Shurland*, 259 F.R.D. at 160 ("FACTA's protections thus extend to holders of both business and consumer credit cards."). In any event, it is doubtful any significant portion of the class used a business card because WHBM sells personal clothing and accessories at retail, and regardless the nature of the cards used can be determined by subpoenaing the issuing banks. Accordingly, this alleged issue cannot defeat class certification. *See In re Toys "R" Us – Delaware, Inc. – Fair and Accurate Credit Trans. Act (FACTA) Litig.*, 300 F.R.D. at 377 ("in all likelihood, the vast majority of purchases were personal…").

### 2.   A Class Action Is a Superior Method of Resolving This Matter.

"Courts routinely find class resolution superior in consumer protection actions, including those brought pursuant to FACTA." *Bush*, 2012 U.S. Dist. LEXIS 40450 at *33-*34, *citing, inter alia, Matthews*, 248 F.R.D. at 216 ("FACTA claims are especially well-suited to resolution in a class action…."). This case should be no different.

A class action is superior to individual actions here because it promotes efficiency and judicial economy. Resolving the common questions presented by the class members' FACTA claims in one lawsuit requires far fewer judicial resources than requiring potentially thousands of individual lawsuits to repeatedly decide the same questions based on the same evidence over and over. *See Williams*, 568 F.3d at 1358 ("If a district court determines that issues common to all class members predominate over individual issues, then a class action will likely be more manageable than and superior to individual actions."); *see also Legg*, 315 F.R.D. at 392 ("The Court will not preside over hundreds of thousands of separate cases when one will do."). Indeed, here "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983); *see also Carriuolo*, 823 F.3d at 989 ("class-wide adjudication appropriately conserves judicial resources and advances society's interests in judicial efficiency.").

A class action is also superior because it promotes justice and fairness. It ensures the proposed class members who don't know they have a claim, or who lack the ability

or wherewithal to bring their own lawsuit, can vindicate their rights. *See Nat'l Air Traffic Controllers Ass'n v. Dental Plans, Inc.*, 2006 U.S. Dist. LEXIS 38772 at *21 (N.D. Ga. Jun. 12, 2006) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."), *quoting Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997); *see also Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("These are considerations that cannot be dismissed lightly …."). Moreover, in the unlikely event that one or more class members do "have a special interest in prosecuting their claims independently, they may opt out of the suit." *Legg*, 315 F.R.D. at 391.

By contrast, there is no legitimate benefit to denying class certification and thereby forcing *all* of the ████████████████ class members to file their own individual lawsuits. Indeed, this would deter many class members from enforcing their rights because recoverable statutory damages are only $100-$1000 (15 U.S.C. §1681n(a)(1)), which may not provide a sufficient incentive to locate counsel, conduct discovery in multiple states, and endure "all the burdens of suing." *See Mace*, 109 F.3d at 344; *see also Holmes v. Continental Can Co.*, 706 F.2d 1144, 1154 (11th Cir. 1983) ("the individual might be unable to obtain counsel to prosecute his action when the amount

23

of individual damages is relatively small.") (citation omitted); *see also*, *e.g.*, *In re Wells Real Estate Inv. Trust., Inc. Sec. Litig.*, 2009 U.S. Dist. LEXIS 131000 at \*21-\*22 (N.D. Ga. Sep. 16, 2009).

Indeed, the work to prosecute these cases and establish willfulness is substantial. Those of Plaintiff's counsel involved in *Legg v. Lab. Corp.*, above, had to take approximately 20 depositions (including 4 experts) and review large amounts of document discovery, and the case did not settle until after a hearing on *Daubert* motions and summary judgment, and two mediations. Likewise, *Legg v. Spirit Airlines* required extensive document discovery, depositions (including a third-party software developer out of country), and the class was only certified over the defendant's objection. Finally *Flaum v. Doctor's Associates, Inc.* required significant document discovery, multiple expert and party depositions, *Daubert* motions, and two mediations.  Not many individuals can be expected to endure or find counsel to take on such efforts for $100-$1000 in statutory damages. Plainly a class action is superior.

In summary, this case meets all of the requirements of Federal Rule 23, and thus the class should be certified.

## IV.    Conclusion

FACTA cases are well suited for class action treatment, and this case is no exception. A certified class action will resolve ████████████████████ nearly-identical small claims in one efficient case. The class easily meets all of the

requirements for class certification under Federal Rule 23. Accordingly, Plaintiff Altman, individually and on behalf of the proposed class, respectfully requests that the Court certify the proposed class, appoint Plaintiff's attorneys as class counsel, and grant and such other relief that the Court deems just.

<div style="margin-left: 2em;">

Respectfully submitted,

Justin T. Holcombe
Skaar & Feagle, LLP
(Ga. Bar No. 552100)
133 Mirramont Lake Drive
Woodstock, GA 30189
Telephone: (770) 427-5600

*s/ Michael S. Hilicki*
(*admitted Pro Hac Vice*)
Keith J. Keogh
Michael S. Hilicki
Keogh Law, Ltd.
55 West Monroe St., Suite 3390
Chicago, IL 60603
Telephone: (312) 726-1092
keith@keoghlaw.com
mhilicki@keoghlaw.com

Bryant Lamer
Spencer Fane
1000 Walnut, Suite 1400
Kansas City, MO 64106
Ph: 816.292.8296
blamer@spencerfane.com

Plaintiff's Counsel

</div>

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1D

Pursuant to Local Rule 7.1D, the undersigned counsel certifies that this document has been prepared using 13- point Book Antigua font.

By: /s/ Michael S. Hilicki
        An Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 10, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which electronically delivered a copy to the parties listed below.

Barry Goheen
J. Anthony Love
King & Spalding
1180 Peachtree Street, N.E.
Atlanta, GA 30309-3521
404-572-4600
Fax: 404-572-4618
bgoheen@kslaw.com
tlove@kslaw.com

/s/ Michael S. Hilicki
An Attorney for Plaintiff