## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| JILL ALTMAN, individually, and on behalf of a class, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:15-cv-2451-SCJ-CMS |
| v. | ) ) | |
| WHITE HOUSE BLACK MARKET, INC., and DOES 1-10, | ) ) ) | |
| Defendant. | ) ) | |

## REPLY MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

WHBM knew its system was programmed to print more than the last five digits of credit card numbers on transaction receipts from using it in Canada, but it still used the system in its U.S. stores, violating FACTA until this lawsuit caused it to stop. Even though its staff could see from the face of the receipts that its system was disclosing customer account information in every card transaction, WHBM blames a third party. These same material facts have been certified for class treatment in other FACTA cases. *See Legg v. Spirit Airlines*, 315 F.R.D. 383, 389 (S.D. Fla. 2015) ("third party's fault" presents a common class issue). WHBM's presents no valid basis for a different result here.

WHBM claims it should be excused from paying the relief Congress deemed appropriate simply because the judgment might be large, but this just stems from the volume of violations WHBM committed, not a defect in proceeding on a class basis. WHBM disputes the class's ascertainability, but its argument is based on a false declaration of an employee who conceded he has no personal knowledge of the matter, and criteria that is not part of the class definition. WHBM disputes Plaintiff meets Rule 23(a)'s typicality requirement by claiming Plaintiff suffered no injury, but the Court already ruled she was injured in denying WHBM's motion to dismiss. (Doc. 28). WHBM also claims the prior involvement of Plaintiff's brother-in-law, who is no longer involved and was replaced with experienced counsel, irreparably renders her an inadequate representative, but this position is contrary to law and logic.

This case should join the numerous FACTA cases certified for class treatment. *See Bush v. Calloway Consol. Group River City, Inc.*, 2012 WL 1016871, *11 (M.D. Fla. Mar. 26, 2012) ("Courts routinely find class resolution superior in consumer protection actions, including those brought pursuant to FACTA.") (collecting cases).

## I.     Plaintiff Carries the Burden of Proof, Nothing More.

Contrary to what WHBM suggests, the Eleventh Circuit did not create a higher standard of proof for class certification in *Brown v. Electrolux Home Prods.*, 817 F.3d 1225 (11th Cir. 2016). The Court only stated there is a presumption against class certification to emphasize that the plaintiff bears the "burden of proof," not to enhance it. *Id.* at 1233. Indeed, "[Rule 23] creates a categorical rule *entitling* a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove Orthopedics Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (italics added).

## II.    The Class Meets the Implied Ascertainability Requirement

A class is "ascertainable" if it is defined using administratively-feasible, objective criteria. *See M.H. v. Berry*, 2017 WL 2570262, *3 (N.D. Ga. Jun. 13, 2017). WHBM does not dispute Plaintiff's definition only includes objective criteria. (Doc. 64 at 11). Moreover, the class has already been ascertained because WHBM produced a spreadsheet identifying the customers whose transactions meet the definition. (*Id.* at 12). Thus, as is common in FACTA cases, the ascertainability requirement is met. *See In re Toys "R" Us Fair and Accurate Credit Trans. Act (FACTA) Litig.*, 300 F.R.D. 347, 366 (C.D. Cal. 2013)

2

("Other courts addressing motions to certify FACTA classes have generally found that such classes are ascertainable."). WHBM's arguments do not show otherwise.[1]

### A.    The Possibility of Email Receipts Does Not Eliminate Ascertainability.

WHBM questions the class's ascertainability because its point-of-sale system can produce email or printed receipts, WHBM claims email receipts are not subject to FACTA, and it further claims it cannot track which transactions involve an email receipt. This argument fails because WHBM already identified which transactions involved a printed receipt. Plaintiff asked WHBM to identify all transactions for which it *printed* a receipt that disclosed more than the last five digits of the person's credit or debit card number, WHBM produced a spreadsheet listing ███ actual card transactions, and WHBM swore the transactions "are responsive" to the interrogatory. (Doc. 64-1 at 5-6).

In addition, if necessary, WBHM *can* identify email receipt transactions and remove them from the above transactions. WHBM's counsel essentially admitted this in response to Plaintiff's demand that WHBM produce data showing which customers got email receipts.  (Exhibit A (Oliver Dep.) at Dep. Ex. 6).

---

[1] In a footnote, WHBM takes issue with the proposed class definition because it slightly differs from the complaint. This is entirely proper. *See Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993) ("A court is not bound by the class definition proposed in the complaint …"); *Bratcher v. Nat'l Standard Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004) ("holding plaintiffs to the plain language of their definition would ignore the ongoing refinement and give-and-take inherent in class action litigation, particularly in the formation of a workable class definition."). In any event, WHBM claims no prejudice.

The declaration WHBM cites to suggest otherwise is false. The declarant is an accountant, not an IT person. (Oliver Dep. at 5:18-10:25, 92:14-19). He admits he has no personal knowledge of whether WHBM can determine who it sent an email receipt. (*See id.* at 91:24-92:25). Instead, his averments about email receipts were based on a meeting with others, not his own knowledge. (*Id* at 94:20-96:6). Confronted with WHBM's counsel's email acknowledging WHBM has email receipt information (but refuses to produce it), the declarant admitted he had no basis to dispute it. (*Id.* at 98:11-101:9).

Finally, there are nearly ███████████ for which WHBM could not have sent an email receipt because it had no email address for the transaction. (Exhibit B (Class Spreadsheet Transactions with No Email, Excerpt)). WHBM cannot send an email receipt without an email address. (Exhibit C (CHARM Ref. Guide) at pg.12 ("██████████ ████████████████████████████.")). Thus, regardless of WHBM's attempt to contradict its sworn discovery responses, there is still an ascertainable class.

### B.     There Is No Consumer/Business Transaction Issue.

WHBM also claims it will be difficult to identify which transactions were "consumer transactions" instead of "business transactions." This is a non-issue because "consumer transaction" is not part of the class definition. (Doc. 64 at 11). WHBM cannot legitimately challenge class ascertainability based on criteria that are not part of the definition, and thus do not need to be identified. *See Rosen v. J.M. Auto, Inc.*, 270 F.R.D. 675, 679 (S.D. Fla. 2009) (cannot defeat class by "misreading … the class definition."); *see*

4

*also Mahon v. Chi Title Ins. Co.*, 296 F.R.D. 63, 76 (D. Conn. 2013) (rejecting arguments "premised on a misreading of the plaintiff's theory of the case…").

WHBM claims Plaintiff "recogniz[ed]" that FACTA distinguishes consumer and business transactions, but she said the opposite. (Doc. 64 at 22, fn. 17). This is because "the plain language of the Act makes no such distinction." *Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 259 F.R.D. 151, 160 (N.D. Ill. 2009). Instead, the Act's text expressly extends its reach to "any receipt." 15 U.S.C. §1681c(g)(1); *see also Grabein v. Jupiterimages Corp.*, 2008 WL 2704451, *2-*3 (S.D. Fla. July 7, 2008) ("***FACTA Applies to Both Business and Consumer Debit Cards***"). The two cases WHBM cites do not show otherwise, as neither identifies any textual exemption of "business" transactions.[2]

But even if FACTA exempted business transactions, courts recognize it is easy to identify who used a business card.[3] The card number shows this. (Exhibit D (Coker

---

[2] WHBM cites *Rowden v. Pacific Parking Systems, Inc.*, 282 F.R.D. 581 (C.D. Cal. 2012), and *Hammer v. JP's Southwestern Foods, L.L.C.*, 2012 WL 12294491 (W.D. Mo. July 24, 2012). *Rowden* points out the statute's liability provision uses the word "consumer," but admits the term is defined to mean an "individual," not an individual who makes a non-business purchase. *Rowden* at 585. An individual who makes a business purchase is still an individual. *Hammer* adds nothing, as WHBM admits it simply relied on *Rowden*.

[3] *See Shurland*, 259 F.R.D. at 161 ("isolating 'consumer' cardholders from entity cardholders is unlikely to prove insurmountable for class identification purposes"); *Beringer v. Std. Parking Corp.*, 2008 WL 4390626, *6 (N.D. Ill. Sept. 24, 2008) ("the court is not yet persuaded that this problem is insurmountable."); *Vasquez-Torres v. StubHub, Inc.*, 2008 U.S. Dist. LEXIS 22503, *16 (C.D. Cal. Mar. 4, 2008) ("Defendants can easily determine whether the card was used in the name of an individual or corporation…").

Expert Report) at ¶45). In any event, WHBM's argument is based on speculation, which cannot defeat a class. *See Klay v. Humana*, 382 F.3d 1241, 1272-73 (11th Cir. 2004) ("Courts are generally reluctant to deny class certification based on speculative problems…"), *abrogated in part on other grounds*, 553 U.S. 639 (2008). WHBM does not identify any such transaction, which would necessarily be few because WHBM sells personal clothing at retail. *Compare*, *e.g.*, *In re Toys "R" Us FACTA Litig.*, 300 F.R.D. at 377 ("in all likelihood, the vast majority of purchases were personal (e.g., toys or children's clothing)."). Thus, WHBM does not refute Plaintiff's showing that the class is ascertainable.

## II.    The Class Meets the Requirements of Federal Rule 23(a).

WHBM does not dispute that the class is too numerous for joinder (Rule 23(a)(1)), or that that the class members' FACTA claims present common questions of law or fact (Rule 23(a)(2)). (Doc. 64 at 13-16). WHBM just wrongly disputes that Plaintiff meets the typicality and adequacy requirements. ((Rule 23(a)(3) and (a)(4)).

### A.    Plaintiff Is Typical – The Court Already Ruled that WHBM Injured Her

Rule 23(a)(3) only asks whether Plaintiff's claim arises from the same practice as the class claims, and whether their claims are based on the same legal theory. (Doc. 64 at 16). WHBM does not dispute Plaintiff meets this test. That should end the matter.

Nevertheless, WHBM claims Plaintiff is atypical because it thinks she suffered no Article III injury, and thus lacks standing. But the Court already rejected this argument, ruling WHBM *did* injure her. (Doc. 28). That decision is not subject to reconsideration

6

unless WHBM shows it is "absolutely necessary" due to a change in law or fact, or "clear error." *See Owens v. Metro Life Ins. Co.*, 2017 WL 106017, *2 (N.D. Ga. Jan. 11, 2017); and N.D. Ga. L.R. 7.2(E). WHBM makes no such claim here. Nor can it. The controlling law and facts have not changed. Every district court in this Circuit reached the *same* conclusion this Court reached in denying motions to dismiss FACTA claims for lack of standing.[4] Also, this Court's decision correctly follows the Supreme Court's unanimous decision in *Havens Realty v. Coleman*, the Eleventh Circuit cases *Church v. Accretive Health, Inc.* and *Houston v. Marod Supermarkets* (Doc. 28 at pp. 8-13) and, most recently, *Perry v. CNN, Inc.*, 854 F.3d 1336 (11th Cir. 2017). *Perry* ruled a violation of a plaintiff's statutory privacy rights, by itself, was a concrete injury. *Id.* at 1340 ("The structure and purpose of the [statute] supports the conclusion that it provides actionable rights.").

Ignoring these decisions and this Court's ruling, WHBM cites *Meyer v. Nicolet Restaurant of De Pere, LLC*, 843 F.3d 724 (7th Cir. 2016), which conflicts with *Havens Realty, Marod Supermarkets, Church*, and pre-dates *Perry*. Also, *Meyer* does not squarely address this Court's conclusion that FACTA confers substantive rights the violation of which, itself, is a concrete injury. *Id.* at 727, fn.2; *compare* Doc. 28 at 12-13. *Meyer* cites no law on that issue, and fails to confront its own circuit authority holding, like this Court, that a

---

[4] *Wood v. J Choo USA*, 201 F.Supp.3d 1332, 1340 (S.D. Fla. 2016); *Bouton v. Ocean Props.*, 201 F.Supp.3d 1341, 1352 (S.D. Fla. 2016); *Flaum v. Doctor's Assocs.*, 204 F.Supp.3d 1337, 1342 (S.D. Fla. 2016); *Guarisma v. Microsoft*, 209 F.Supp.3d 1261, 1267 (S.D. Fla. 2016).

violation of one's substantive rights is itself a concrete injury.[5]

WHBM also cites *Nicklaw v. Citimortgage*, 839 F.3d 998 (11th Cir. 2016), but it dealt with a state law procedural "30 day" requirement for releasing mortgages, not federal substantive rights. *Id.* at 1000.[6] *Nicklaw* does not address FACTA, or whether a violation of substantive rights is itself a concrete injury. As shown in *Perry*, decided after *Nicklaw*, this Court correctly ruled a violation of substantive rights is itself a concrete injury.

Also, *Nicklaw* supports Plaintiff because it agrees a statutory violation can meet the injury requirement if it involves a "harm or risk of harm." *Id.* at 1003. That is the case here because, as this Court noted, Congress found WHBM's conduct, *i.e.*, disclosing too much of its customers' card account numbers, creates a risk of identity theft. (Doc. 28 at 15, fn. 9 ("Congress did not see the risk of identity theft as hypothetical.")).

Finally, WHBM's argument does not implicate Plaintiff's typicality because it is undisputed that Plaintiff's and the class's claims arise from the same material facts, and WHBM does not concede *any* of them have standing. Plaintiff is typical of the class.

---

[5] *See Kyles v. J.K. Guardian Sec. Servs.*, 222 F.3d 289, 303 (7th Cir. 2000) ("Congress has the authority to create a substantive right, the denial of which alone gives rise to a cognizable injury..."); *Bellwood v. Dwivedi*, 895 F.2d 1521, 1526-27 (7th Cir. 1990) (same).

[6] The *Nicklaw* statute had both a substantive component (the right to a recorded release of mortgage) and a procedural component (the obligation to record the release within 30 days). *See id. at* 1000. But the plaintiff only alleged a violation of the procedural component because, by the time he sued, the release had been recorded. *Id.* at 1003. *See Ruk v. Crown Asset Mgmt., LLC*, 2017 WL 3085282, *6 (N.D. Ga. Mar. 22, 2017) ("*Nicklaw* involved a mere filing deadline violation with no consequence.").

8

### B. Plaintiff Is an Adequate Representative – There Is No "Conflict of Interest" or Other Relevant Basis to Question Her Suitability.

#### 1. There Is No Conflict of Interest.

WHBM does not dispute that Rule 23(a)(4) only asks if there is a "fundamental" conflict of interest between Plaintiff and the class and if her counsel are qualified, nor does it address her proof. (Doc. 64 at 17-20). Instead, it dwells on Plaintiff's *former* counsel, Mr. Wexler, who was replaced by experienced counsel long ago. WHBM claims Wexler's involvement creates a conflict, but "class certification cannot be defeated merely because Defendants assert unsupported allegations of conflict…." *United Wis. Servs. v. Abbott Labs.*, 220 F.R.D. 672, 690 (S.D. Fla. 2004). WHBM must show "substantial conflicts of interest." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) ("[O]nly the most egregious misconduct … could ever arguably justify denial of class status.") (citations omitted). WHBM does not and cannot make that showing.

As an initial matter, a family relation with counsel does not necessarily create a conflict.[7] Nevertheless, Mr. Wexler withdrew out of an abundance of caution, Plaintiff hired new counsel, and they undisputedly stand at arms' length. This eliminates any issue because, contrary to WHBM's misstatement that adequacy must be shown at "all

---

[7] *See Zuccarini v. Hoechst*, 200 F.R.D. 326, 337 (E.D. Mich. 2001) (familial or close relationship with counsel does not necessarily disqualify plaintiff); and *Miller v. Farmers Ins. Grp.*, 2012 WL 8017244, \*10-\*11 (W.D. Okla. 2012) (plaintiff and counsel brothers); *Lewis v. Goldsmith*, 95 F.R.D. 15, 20 (D.N.J. 1982) (counsel was plaintiff's uncle); *Fischer v. Int'l Tel. & Tel. Corp.*, 72 F.R.D. 170 (E.D.N.Y. 1976) (counsel was plaintiff's son).

stages," Plaintiff's adequacy is only determined for "all stages of the litigation *where absent class members will be bound* by the court's judgment." *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1254 (11th Cir. 2003) (italics added, citation omitted). Mr. Wexler's involvement was pre-certification, before class members could be bound. Thus, it poses no issue. *See*, *e.g.*, *Steinberg v. Natinwide Mut. Ins. Co.*, 224 F.R.D. 67, 75-76 (E.D.N.Y. 2004).

WHBM claims *London* is comparable to this case, but it could hardly be more different. There, the plaintiff and his counsel had "significant personal and financial ties" at the class certification stage. *Id.* at 1255. Here, by contrast, it is undisputed that Plaintiff has no personal or financial ties to her proposed class counsel.

WHBM claims Wexler's prior involvement still creates a conflict because he filed a notice of attorney's lien. But he only filed the notice after being told class counsel could not agree to share fees with him, to avoid any conflict. (<u>Exhibit E</u> (Suppl. Declaration of Bryant Lamer) at ¶3). If anything, the notice just confirms Mr. Wexler has no further involvement. Also, an asserted lien cannot create a conflict between Plaintiff and the class because, as WHBM's own case shows, the lien's validity and amount (if any) will be decided by the Court, not Plaintiff, and then only after the case ends. *See Brown v. Global Empl. Sols.*, 2017 WL 655531, *6 (N.D. Ga. Feb. 17, 2017).

The cases WHBM cites expressed concern that a lawyer-relative might be allowed to settle the case on terms that favored the lawyer over the class. There is no such concern here because Mr. Wexler has no say in any settlement, and recovery on a lien is only

*quantum meruit* for work already performed. *See Brown*, 2017 WL 655531 at *6. WHBM's cases do not address these facts or hold they present any conflict, let alone a "substantial" one.[8] Plainly, they don't. *See Steinberg*, 224 F.R.D. at 76 (representation adequate even though plaintiff sought fees for earlier work in case as counsel).

### 2. Plaintiff's Arms' Length Relationship with Her Current Counsel Does Not Create an Adequacy Issue.

After insisting that Plaintiff and proposed class counsel maintain an arms' length relationship, WHBM attacks that relationship, claiming it too somehow renders Plaintiff inadequate. None of its arguments have merit.

WHBM complains that Plaintiff found her Kansas City counsel through Mr. Wexler, but there is nothing nefarious about meeting one's lawyer through another lawyer. WHBM also claims Plaintiff did not sign her most recent lawyer-retention contract until last March, but this just reflects when she hired new counsel. (*See* Doc. 63-10 at 148-149). Next, WHBM faults Plaintiff for not "investigating" her counsel, but there was no such need because it is undisputed they are amply qualified class counsel, and achieved the four largest, all-cash, no-reversion FACTA settlements. (Doc. 64 at 18-19).

WHBM claims the above arguments are supported by *Foley v. Buckley's Great Steaks*, 2015 WL 1578881 (D.N.H. Apr. 9, 2015), but the issue in *Foley* was the plaintiff's

---

[8] The cases WHBM cites included *Eubank v. Pella Corp.*, 753 F.3d 718, 723-24 (7th Cir. 2014); *Zylstra v. Safeway Stores, Inc.*, 578 F.2d 102, 104 (5th Cir. 1978); and *0'Shaughnessy v. Cypress Media*, 2015 WL 4197789, *5 (W.D. Mo. July 13, 2015).

alleged lack of knowledge or participation. *Id.* at *3. Those are questionable grounds to challenge adequacy in this Circuit. *See In re: Theragenics Corp.*, 205 F.R.D. 687, 696 (N.D. Ga. 2002), citing *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987) ("Adequate class representation generally does not require that the named plaintiffs demonstrate to any particular degree that they will individually pursue with vigor the legal claims of the class.").

In any event, Plaintiff's deposition shows she is informed and engaged. (Doc. 63-10). She understands what WHBM did and why it's illegal, reviewed the complaint before it was filed, answered discovery, traveled to Atlanta from her home in Texas to give her deposition, understands how a class action works, explained why she filed this case as a class action, and understands her duties to the class. (*Id.* at 24:3-4, 30:14-20, 32:10-14, 33:10-13, 60:20-61:10, 76:17-21, 139:13-17, 151:15-25). Plainly she is adequate.

### 3. Plaintiff Had to Choose Between Statutory Damages and Actual Damages, and that Choice Does Not Affect Her Adequacy.

WHBM also disputes Plaintiff's adequacy because she seeks statutory damages instead of actual damages. However, this choice was forced upon her by the law, which only permits recovery of one or the other. *See Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1313 (11th Cir. 2009) ("plaintiffs may elect to receive actual damages *or* statutory damages, but not both…"). If that choice disqualified a plaintiff, no FACTA case could be certified, even though class certification in FACTA cases is the norm. *See*

*Bush*, 2012 WL 1016871, *11; *Matthews v. United Retail*, 248 F.R.D. 210, 216 (N.D. Ill. 2008).

WHBM claims some class members *might* have actual damages exceeding recoverable statutory damages, but that is disingenuous because WHBM claims they suffered "no injury." It is also rank speculation. WHBM identifies no facts showing any member's transaction receipt genuinely could have caused them more than $1,000 in actual damages. Again, speculation cannot defeat a class. *See Klay*, 382 F.3d at 1272-73.

But even if some members had more than $1,000 in actual damages, there would still be no issue because they could opt out if they preferred to seek a larger award. *See Miller-Huggins v. Mario's Butcher Shop*, 2010 WL 658863, *4 (N.D. Ill. Feb. 22, 2010) (WHBM's argument "ha[s] been rejected in other cases because FACTA violations are likely to have caused little provable actual damages and any class member who has suffered substantial actual damages is free to opt out of the class.") (collecting cases).

WHBM claims the right to opt out is not a sufficient answer to the speculative possibility that some class members might have more than $1,000 in actual damages, but it never explains why the right to opt out is insufficient *here*. The mere speculative possibility that *some* class members might have greater actual damages cannot justify depriving *all* class members of the opportunity to resolve their claims in a class action. *See Murray v. GMAC Mort. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) (unless "personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class

certification."). WHBM's cases do not show otherwise.[9] Nor could they. In every settled class action, class members generally must choose between a lower recovery or opting out. *See* Fed. R. Civ. P. 23(e)(4). In short, WHBM does not refute Plaintiff's adequacy.

## III.   This Case Meets Rule 23(b)(3)'s Requirements

### A.   The Common Liability Questions Predominate.

It is undisputed this case presents common questions, *i.e.*, whether WHBM's practice of disclosing ten account digits on receipts violates FACTA, and whether its violations were willful. (Doc. 64 at 15-16). It also is undisputed that Rule 23(b)(3)'s "predominance" element only requires that the common questions have a "direct impact" on each class member's ability to recover, and that they do here because their resolution establishes WHBM's liability to each class member. (*Id.* at 20-22). Thus, as is typical of FACTA cases, the predominance element is easily met. *See Toys "R" Us FACTA Litig.*, 300 F.R.D. at 376 ("The vast majority of courts outside this district have similarly found that common questions predominate in FACTA class actions.")

WHBM does not address the test for predominance or Plaintiff's showing that this case meets it. Instead, WHBM just asserts "the amount of statutory damages is an

---

[9] WHBM cites *Harper v. Trans Union,* 2006 WL 3762035, *7 (E.D. Pa. 2006) (non-FACTA case); *Singletery v. Equifax,* 2011 WL 9133115 (N.D. Ala. 2011) (same); *Preston v. Morgan Guaranty,* 2004 U.S. Dist. LEXIS 28914 (M.D. Fla. 2004) (same); *Dickens* v. *GC Servs.,* 220 F. Supp. 3d 1312 (M.D. Fla. 2016) (same); *Gardner v. Equifax*, 2007 WL 2261688 (D. Minn. 2007) (same); *Colindreas v. QuietFlex Mfg,* 235 F.R.D. 347 (S.D. Tex. 2006) (same).

individual issue." This argument fails because the mere presence of an individual issue does not defeat class certification. Again, the alleged individual issue must "predominate." *Klay*, 382 F.3d at 1254 ("it is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions."). WHBM does not even attempt to make that showing.

Nor can it. WHBM's cases dealt with actual damages, and predate the Eleventh Circuit's observation that "[t]he 'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that common issues predominate.'" *Brown v. Electrolux Home Prods.*, 817 F.3d 1225, 1239 (11th Cir. 2016).[10]

Furthermore, WHBM is wrong to argue that calculating statutory damages will require individual determinations here. There is no basis for differing awards because WHBM acted the same as to every class member. Each claim is based on the same facts (a printed receipt showing ten account digits), and each claim has the same $100-$1000 statutory recovery range. Thus, the calculation is a common issue which, combined with the common liability issues, further shows that the common questions predominate. *See In re Toys "R" Us FACTA Litig.*, 300 F.R.D. at 377 ("Courts have been more willing to find

---

[10] WHBM cites *Campos v. ChoicePoint,* 237 F.R.D. 478, 486 n.20 (N.D. Ga. 2006) (discussing actual damages, which are not sought here); *Preston,* 2004 U.S. Dist. LEXIS 28914, *12 (concerned about actual damages, which are not sought here); *Glatt v. PMI Group, Inc.,* 2004 WL 7323581, *5 (M.D. Fla. 2004) (similar to *Preston*); *Shepherd v. Vintage Pharm.,* 310 F.R.D. 691, 701 (N.D. Ga. 2015) (unlike here, personal injury damages sought).

predominance where, as here, the class seeks only statutory damages.").

WHBM claims its "mitigation" defense requires individualized determination, but it cites no case holding this defense applies to statutory damages, and no evidence this is an issue for any class member. And contrary to WHBM's speculation that no class member who "mitigated" damages could conceivably want to participate in this case, is entirely conceivable (indeed likely), because the potential recovery is low, and the time, effort and expense to bring one's own lawsuit is high. WHBM does not identify a single class member who filed their own suit. Finally, WHBM does not cite any case that found "mitigation of damages" to predominate over common liability issues.[11] No doubt, this is because the "black letter rule" is that "individual damage calculations generally do not defeat a finding that common issues predominate." *Brown*, 817 F.3d at 1239. WHBM does not defeat Plaintiff's showing that common questions predominate.

**B.    A Class Action Is Superior to Individual Actions**

**1.    The Issue Is Whether a Class Action Is "Superior"**

A class action is superior because it spares the courts the need to preside over and decide the common issues this case presents multiple times instead of just once. *See*

---

[11] WHBM cites *Smith v. Santander Consumer USA, Inc.*, 703 F.3d 316 (5th Cir. 2012); *Notley v. Sterling Bank*, 2007 WL 188682 (N.D. Tex. Jan. 24, 2007); *Stillmock v. Weis Mkts., Inc.*, 385 Fed. Appx. 267, 277 (4th Cir. 2010) (concurring opinion). *Santander* and *Notley* were not class actions, and in *Stillmock* the denial of class certification was *reversed*. *Id.* at 275.

*Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."). It is also superior because the available per-claim relief is the same in a class action or individual action, but a class action spares members the need to realize they have a claim, find a lawyer willing to take the case, and deal with "all the burdens of suing." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).

WHBM does not address these points. It just claims individual actions are a "viable alternative," and cites non-binding cases to argue individual actions are "well-incentivized" because FACTA provides for attorney fees. This reasoning misreads Rule 23. The issue is whether a class action is "superior" to individual actions, not whether it is the "only viable" method. *See Carriuolo v. G.M. Co.*, 823 F.3d 977, 989 (11th Cir. 2016) (Rule 23(b)(3) tests "superiority" of a class action); *see also Legg*, 315 F.R.D. at 391-392.

In addition, the viability of individual lawsuits is dubious. "[T]here is no reasoned basis to conclude that the fact that an individual plaintiff can recover attorney's fees in addition to statutory damages of up to $1,000 will result in enforcement of FCRA by individual actions of a scale comparable to the potential enforcement by way of class action." *Stillmock*, 385 Fed. Appx. at 274; *see also Tchoboian v. Parking Concepts, Inc.*, 2009 WL 2169883, *9 (C.D. Cal. July 16, 2009) (same). "Given the relatively small amount of damages[,] … class members are likely to have little interest in controlling the litigation." (Exhibit F (*Cordoba v. DirectTV, LLC*, 15-cv-3755, Order at p.47 (N.D. Ga. July 12, 2017)).

This case shows why. WHBM identified over 15 witnesses, including non-parties (Exhibit G (Ans. to Rogs. 6 and 7)), it produced nearly 14,000 pages of documents, Plaintiff had to engage an expert, and must overcome the difficult task of proving WHBM's violation was willful. Few class members could find a lawyer wiling to front that kind of expense and effort to prove a claim only worth up to $1,000, "plus fees."

WHBM only prefers individual actions because it knows most class members will not individually sue. It does not identify a single one who has. But WHBM's desire to skirt liability is not a legitimate basis to dispute that a class action is superior.

Finally, WHBM claims "the ability to focus on the specific facts of each potential plaintiff also makes individual actions superior to class treatment." But it gives no basis for this argument. Nor can it because again, WHBM does not identify any material "individual" issue, let alone any that predominate. A class action remains superior.

## B.    The Class's Potential Aggregate Recovery Is Not a Legitimate Basis for Opposing Class Certification.

WHBM perversely claims a class action is not superior because it broke the law too many times. WHBM speculates that *if* the class proves it willfully violated FACTA, WHBM *might* be held liable for an award of up to ███████ and this *potential* would be unconstitutionally excessive. WHBM's argument is premature at best:

> the as-applied excessiveness challenge is not ripe. At this stage in the proceedings it is impossible to know whether the classes will be certified, how many individuals will be included in each class, whether they will prove willfulness, and the size of the ultimate verdicts.

*Harris*, 564 F.3d at 1310. Accordingly, this alleged issue must be tabled until *after* class certification and the merits are resolved. *See id.*; and *see Legg*, 315 F.R.D. at 392.

WHBM's argument also fails on its facts. WHBM admits it is worth nearly half a *billion*, its affiliate paid nearly $42 million in dividends last year alone (Oliver Dep. at 80:1-9), and here the jury may only choose to award the statutory minimum of $100 per claim (or about ███████). WHBM's finance witness admits WHBM could absorb that judgment. (*Id.* 84:10-21). This starkly contrasts with the cases WHBM cites, one involving a *local restaurant* facing a $46 million liability, and the other a defaulted *pro se* defendant.[12]

WHBM also contradicts Congressional intent. A "potentially large award" is not a legitimate superiority inquiry. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 722-723 (9th Cir. 2010) ("To limit class availability merely on the basis of 'enormous' potential liability that Congress explicitly provided for would subvert congressional intent."); *Murray*, 434 F.3d at 953 ("The reason that damages can be substantial, however, does not lie in an 'abuse' of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person, 15 U.S.C. §1681n(a)(1)(A), combined with [defendant's numerous violations].") (brackets added). Class relief is only unavailable if Congress expressly says so. *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979). With FACTA, it did not.

WHBM bases its argument on *London*, but *London* did not reach the issue. *London*,

---

[12] *Leysoto v. Mama Mia I.*, 255 F.R.D. 693, 698 (S.D. Fla. 2009); *Ehren v. Moon, Inc.*, 2010 WL 5014712, *1-2 (S.D. Fla. 2010). *Leysoto* has since been limited. *Legg*, 315 F.R.D. at 392.

340 F.3d at 1255 ("we need not reach the remaining issues ....") and fn.5. Also, *London*
predates *Harris*, *Bates* and *Murray*, and does not address *Califano*. Finally, WHBM's
argument is contrary to *Shady Grove*, whose plurality found it "obvious" that plaintiffs
are entitled to aggregate multiple small claims for statutory damages in a class action:

> It is undoubtedly true that some plaintiffs who would not bring individual
> suits for the relatively small sums involved will choose to join a class action.
> That has no bearing, however, on [the defendant's] or the plaintiffs' legal
> rights. The likelihood that some (even many) plaintiffs will be induced to sue
> by the availability of a class action is just the sort of 'incidental effec[t]' we have
> long held does not violate § 2072(b).

559 U.S. at 408. The concurrence provides a fifth vote for this holding. *Id.* at 435, n.18.[13]

In short, the size of the potential award is irrelevant. A class action is still superior.

## Conclusion

Class certification turns on Rule 23's actual requirements, not invented "issues."
*See Local 703 I.B. v. Regions Fin. Corp.*, 762 F.3d 1248, 1253 (11th Cir. 2014) (class decision
subject to reversal if based on "the wrong legal standard" or "applies the law in an
unreasonable or incorrect manner."). Rule 23 "creates a categorical rule entitling a
plaintiff whose suit meets the specified criteria to pursue his claim as a class action."
*Shady Grove*, 559 U.S. at 398. Those criteria are met here. This motion should be granted.

---

[13] Responding to Justice Ginsburg's argument that class certification would "transform
a $500 case into a $5,000,000 award," Justice Stevens notes: "class certification would
transform 10,000 $500 cases into one $5,000,000 case. It may be that without class
certification, not all of the potential plaintiffs would bring their cases. But that is true of
any procedural vehicle …" *Id.* at 435, n.18.

Respectfully submitted,

Justin T. Holcombe
Skaar & Feagle, LLP
(Ga. Bar No. 552100)
133 Mirramont Lake Drive
Woodstock, GA 30189
Telephone: (770) 427-5600

_s/ Michael S. Hilicki_
(_admitted Pro Hac Vice_)
Keith J. Keogh
Michael S. Hilicki
Keogh Law, Ltd.
55 West Monroe St., Suite 3390
Chicago, IL 60603
Telephone: (312) 726-1092
keith@keoghlaw.com
mhilicki@keoghlaw.com

Bryant Lamer
Spencer Fane
1000 Walnut, Suite 1400
Kansas City, MO 64106
Ph: 816.292.8296
blamer@spencerfane.com

Plaintiff's Counsel

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1D**

Pursuant to Local Rule 7.1D, the undersigned counsel certifies that this document

has been prepared using 13 point Book Antigua font.

By: /s/ Michael S. Hilicki
       An Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 3, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which electronically delivered a copy to the parties listed below.

Barry Goheen
J. Anthony Love
King & Spalding
1180 Peachtree Street, N.E.
Atlanta, GA 30309-3521
404-572-4600
Fax: 404-572-4618
bgoheen@kslaw.com
tlove@kslaw.com

*/s/ Michael S. Hilicki*
An Attorney for Plaintiff