# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

JILL ALTMAN, individually,
and on behalf of a class,

    Plaintiff,

v.

WHITE HOUSE BLACK
MARKET, INC., and DOES 1-10,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)

Civil Action No.

1:15-cv-2451-SCJ-CMS

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S RENEWED MOTION TO DISMISS OR, ALTERNATIVELY FOR SUMMARY JUDGMENT

This is the *fifth* time WHBM asks this Court to address Ms. Altman's standing, even though the facts and controlling authority have not changed since the Court first ruled she has standing, even though most district courts in this Circuit agree with this Court, and even though the Court *just denied* WHBM's most-recent request for reconsideration of the issue a few weeks before WHBM filed this motion.

Once again, WHBM's reconsideration request should be denied. Ms. Altman only needs a single injury for Article III standing, and she incurred several. The undisputed facts demonstrate she incurred the same two injuries the Court already

1

found, plus two additional injuries the Court did not need to reach in rejecting WHBM's initial motion.

In short, this Court got it right the first time (and each time thereafter), and Ms. Altman should not have to keep briefing this issue. For same reasons as before, and others, WHBM does not and cannot meet its burden of proving the Court should reconsider Ms. Altman's standing, or that it is entitled to judgment on that issue.

## The Applicable Law and Relevant Case Background

### A. FACTA

Congress passed FACTA because it determined, based on hearings and evidence from experts, including credit card industry stakeholders, that memorializing too much of consumers' credit card account information on their transaction receipts exposes them to a material risk of identity theft.[1] Specifically,

---

[1] "Identity theft occurs when someone commits fraud by using another person's identifying information, such as date of birth, Social Security number, or credit account numbers. The fraud could include applying for or using credit in another's name … or similar illegal conduct in the 'true name' identity of the consumer whose information was misappropriated." *Hearings Before the S. Comm. on Banking, Hous. & Urban Affairs*, 108th Cong., S. HRG. 108–579, p.49, n.17 (2003) (Prepared Statement of J. Howard Beales, III, Director, Bureau of Consumer Protection, U.S. Federal Trade Commission (May 15, 2003); *see also* pp.72-73 (Statement of Sen. Corzine) ("truncating of credit card numbers"); pp.77-78 (Statement of Sen. Schumer) ("We should truncated credit card receipts"), p.171 and 180 (Prepared Statement, Linda Foley, Executive Director, Identity Theft Resource Center) (recommending "Truncation of Credit Card Account Numbers on Credit Card Receipts") (available at

such disclosure makes it significantly easier for thieves to find or deduce a consumers' full account information. (*See* S. Rep. No. 108-166 at p.3 and at p.13, §113 (Oct. 17, 2003) (FACTA will prevent "easy access to such key information" and "limit the number of opportunities for identity thieves to 'pick off' key card account information."); 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003) ("[s]lips of paper that most people throw away should not hold the key to their savings and financial secrets.") (Pres. G.W. Bush).[2] In other words, "the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information and thus be able to make purchases...." *See Redman v. Radioshack, Inc.*, 768 F.3d 622, 626 (7th Cir. 2014).[3]

---

https://www.gpo.gov/fdsys/pkg/CHRG-108shrg95254/pdf/CHRG-108shrg95254.pdf) (last accessed April 5, 2018).

[2] *See also* Sayles, Rebecca, "Get Your FACTAs Straight: The Application of FACTA's Truncation Provision to Online Transactions," *St. John's L. Rev.* Vol. 86:1011; Iss. 3, Article 6, at p.1014 (Fall 2012) ("the dangers of identity theft occurring as a result of a non-truncated credit card receipt are widely known. FACTA's truncation provision was aimed at eliminating this risk for consumers.").

[3] Later congressional testimony reaffirmed the risk posed by "dumpster divers," "unscrupulous employees" and "phishing," all mitigated by FACTA's truncation requirement. *See* S. Hrg. 109-1087 (May 10, 2005) at p.75 (Prepared Statement of Mari J. Frank, Esq.) ("There are many ways that fraudsters obtain data about us--it may be appropriated by, stolen mail, **dumpster-diving**, lost or stolen wallets, shoulder surfing, burglary, friends, relatives (only about 9 percent), **unscrupulous employees**,

Accordingly, as this Court found, FACTA gives cardholders an actionable right to have their credit card information masked on the receipt. (ECF 28 at 12-13). Specifically, it requires merchants to mask or "truncate" all but the last five digits of the cardholder's account number on the receipt, and it provides for an award of statutory damages for any "willful" violation. (*Id.*; *see also Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 and 1313 (11th Cir. 2009)).

## B. Background and Material Facts

Despite being aware of FACTA's requirements, WHBM installed a point-of-sale system in its retail stores that its staff knew was programmed to print the first six and last four digits, *i.e.*, nearly two-thirds, of its customers' account numbers on transaction receipts. (*See*, *e.g.*, Plaintiff's Statement of Additional Facts ("SOAF") at ¶6 and at Ex.3 (Jubert Dep.), pp.26:22-43:3). Moreover, WHBM continued to allow its system to operate in this manner for months, systematically violating FACTA as to several hundred thousand customers. (ECF 105 at 5). WHBM only stopped in

---

phone fraud, Internet fraud (**phishing** and pharming), spyware, hackers, unprotected wireless networks, unethical use of public documents that contain personal information, needless display of the Social Security numbers on government documents (such as; military and Medicare identification cards); the transfer sale and sharing of Social Security numbers and other data among financial institutions, credit reporting agencies and data brokers.") (emphasis added) (available at https://www.gpo.gov/fdsys/pkg/CHRG-109shrg61787/pdf/CHRG-109shrg61787.pdf) (last accessed April 5, 2018).

response to this lawsuit, even though it could see from the face of the receipts that it was violating the law.

In May 2015, Ms. Altman made a purchase at a WHBM store using her American Express Card, and WHBM's store staff provided her with a transaction receipt that disclosed the first six and last four digits of her card account number. (SOAF at ¶5-¶6).

WHBM's inclusion of the first six and last four digits of Ms. Altman's account number on the receipt exposed her to the risk of identity theft by reducing the number of digits a thief seeing or finding the receipt would need to learn to obtain her full account number, thus making it easier to determine or deduce her full account information by calculation, making "phishing" inquiries, conducting multiple test purchases, or otherwise. (SOAF at ¶13-¶22). In addition, the first six digits of American Express card numbers reveal part of Ms. Altman's personal identifying number. (SOAF at ¶11 ("The fifth digit through the eleventh digit are the actual account number.")).

Finally, disclosure of Ms. Altman's information on the receipt enabled WHBM's store staff to see it, via the receipt, when they would not have otherwise been able to do so. WHBM stores used customer-facing card readers, meaning the customer swiped the card through the reader to make payment instead of handing

the card to the clerk. (SOAF at ¶3). But the clerk prints and provides the receipt to the customer. (*Id.* at ¶4).

Upon examining the receipt and realizing it disclosed far more of her account number than it was supposed to disclose, Ms. Altman took care to retain the receipt, and ensure it did not get lost or discarded. (SOAF at ¶7-¶9).

## C. This Is WHBM's Fifth Attempt to Argue Ms. Altman's Standing.

WHBM began the case by moving to dismiss, claiming Ms. Altman did not incur an Article III injury even though it violated her substantive rights, exposed her to a Congressionally-recognized risk of identity theft, breached her privacy interests, and forced her to secure or destroy her receipt to prevent further disclosure. This Court denied WHBM's motion in a thorough opinion finding Ms. Altman incurred multiple Article III injuries. (ECF 28 at 13, 18-19).

Dissatisfied with that result, WHBM has regularly tried to revisit it. It moved for an interlocutory appeal under §1292(b), which this Court denied. (ECF 42). It then asked for reconsideration in opposition to class certification, but the magistrate found no basis to do so. (ECF 105 at 18-19). It then asked to reconsider again in its objections to the magistrate's R&R, and again this Court found its decision correct, even after reviewing both the original ruling and additional cases that have come down since

the original ruling. (ECF 137 at 6). The Court issued this most recent decision on February 12, 2018, just a few weeks before WHBM filed the instant motion. (*Id.*).

Now WHBM seeks reconsideration again based on the same facts and essentially the same cases. Accordingly, for the same reasons this Court found, and others, WHBM's latest bid for reconsideration of this Court's standing rulings, and its alternative request for summary judgment based on the same arguments, should be denied.

### Governing Standards

WHBM's request that the Court again reconsider the denial of its motion to dismiss should be rejected unless WHBM shows it is "absolutely necessary" due to a change in law or fact, or "clear error." *See Owens v. Metro Life Ins. Co.*, 2017 U.S. Dist. LEXIS 3894 at *5-*6 (N.D. Ga. Jan. 11, 2017); and N.D. Ga. L.R. 7.2(E).

WHBM's alternative request for summary judgment is governed by Federal Rule 56. WHBM must show that there is no "genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)**.** In determining whether WHBM meets its burden, all facts must be construed in Ms. Altman's favor, and Ms. Altman must be given the benefit of all reasonable inferences that can be drawn from those facts. *Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013).

**Argument**

After extensive analysis of WHBM's motion to dismiss, and re-analysis in response to WHBM's objection to the magistrate's class certification R&R, this Court twice found Plaintiff incurred an Article III "injury" under controlling law. (ECF 28 at 13, 19; ECF 137 at 6). WHBM does not present any change in law or fact, or "clear error," to justify reconsideration. On that ground alone, WHBM's renewed dismissal request fails. *See Owens*, 2017 U.S. Dist. LEXIS 3894 at *5-*6; and N.D. Ga. L.R. 7.2(E). Likewise, WHBM cannot prove entitlement to judgment as to Ms. Altman's standing because the undisputed facts and controlling law confirm she incurred an Article III injury.[4]

## I.    Article III's Injury Requirement.

An injury in fact is "particularized" and "concrete." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1545 (2016), citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). WHBM does not meaningfully dispute that Ms. Altman's injuries are "particularized."[5] Instead, it claims her injuries are not "concrete."

---

[4] The injury also must be fairly traceable to WHBM's actions and redressable. The Court already found these elements met. (ECF 28 at 19). WHBM does not challenge them here.

[5] An injury is "particularized" if it relates to the plaintiff "in a personal and individual way." *Spokeo*, 136 S.Ct. at 1548. Ms. Altman easily meets this test because WHBM

8

A "concrete" injury is simply one that is "real" or "de facto," *i.e.* "it must actually exist." *Spokeo*, 136 S.Ct. at 1548. This includes non-economic, intangible injuries. *See id.* at 1549 ("we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete."). Indeed, being subjected to a "risk of real harm" is a form of Article III injury. *Id.*; *see also Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 691 (8th Cir. 2017) ("That concrete injury can be 'the risk of real harm.'), quoting *Spokeo*, 136 S.Ct. at 1549.

By contrast, "concrete" does not mean economic, substantial, or even measurable. To the contrary, an "'identifiable trifle,' is sufficient to confer standing." *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009), quoting *United States v. Students Challenging Reg. Agency Procs. (SCRAP)*, 412 U.S. 669, 689, n.14 (1973).

In determining whether an asserted harm or risk of harm clears this low bar, the "history and the judgment of Congress play important roles." *Spokeo*, 136 S.Ct. at 1549. "It is instructive to consider whether an alleged intangible harm has a close

---

disclosed *her* personal credit card account information on the receipt, and she alleges this violated of *her* personal FACTA rights (SOAF at ¶6, ¶8, ¶10). These circumstances establish a "particularized" injury. *See Wood v. J Choo USA, Inc.*, 201 F. Supp. 3d 1332, 1337, n.5 (S.D. Fla. 2016) (FACTA case). WHBM summarily suggests it challenges whether Ms. Altman presents an injury that is "particularized," but WHBM presents no argument or law to develop the point, thus waiving it. *See Cont. Tech. Serv., Inc. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991).

relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.*, citing *Vermont Agency of Nat'l Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 775-77 (2000). Alternatively, "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Spokeo*, 136 S.Ct. at 1549, quoting *Lujan v. Defenders of Wildlife*, 504 U.S. at 555, 580 (1992) (Kennedy, J., concur); *see also Massachusetts v. EPA*, 549 U.S. 497, 516 (2007) (same, noting "That authorization is of critical importance to the standing inquiry.").

Indeed, the Supreme Court has repeatedly held that the violation of one's statutory rights is enough for Article III: "[the] actual or threatened injury required by Art. III may exist *solely* by virtue of '*statutes creating legal rights*, the *invasion of which* creates standing.'" *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982), quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (italics added). *Spokeo* reaffirms this rule, even in the context of a violation of statutory *procedural* rights. *Spokeo*, 136 S.Ct. at 1549. ("the violation of a *procedural* right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified.") (first italics added). *Spokeo* also observed there are circumstances in which a violation of procedural rights, standing alone, may not be sufficient. *See id.*

As this Court found, however, the *Spokeo* majority never discussed the injury requirement in the context of *substantive* rights. (ECF 28 at 10 ("As correctly noted by Plaintiff, the majority opinion in <u>Spokeo</u> only focused on a violation of one of the FCRA's procedural requirements, as opposed to a substantive right, which Plaintiff alleges in the case *sub judice* (and the Court agrees is at issue here)."); *accord Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982 (9th Cir. 2017) ("Importantly, *Spokeo* concerned *procedural* violations of the FCRA that would not invariably injure a concrete interest. … By contrast, [the statutory] provision at issue here, codifies a context-specific extension of the substantive right to privacy…").

Justice Thomas fills this gap, confirming that in the context of substantive or "private" rights, the statutory violation alone is a concrete injury:

> Common-law courts imposed different limitations on a plaintiff's right to bring suit depending on the type of right the plaintiff sought to vindicate. Historically, common-law courts possessed broad power to adjudicate suits involving the alleged violation of private rights, even when plaintiffs alleged only the violation of those rights and nothing more. "Private rights" are rights "belonging to individuals, considered as individuals." 3 W. Blackstone, Commentaries *2 (hereinafter Blackstone). …. In a suit for the violation of a private right, courts historically presumed that the plaintiff suffered a *de facto* injury merely from having his personal, legal rights invaded. Thus, when one man placed his foot on another's property, the property owner needed to show nothing more to establish a traditional case or controversy.

> * * *

> A plaintiff seeking to vindicate a statutorily created private right need not

allege actual harm beyond the invasion of that private right. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–374, 102 S.Ct. 1114, 71 L. Ed. 2d 214 (1982) (recognizing standing for a violation of the Fair Housing Act); *Tennessee Elec. Power Co. v. TVA*, 306 U.S. 118, 137–138, 59 S.Ct. 366, 83 L. Ed. 543 (1939) (recognizing that standing can exist where "the right invaded is a legal right,—one of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers a privilege").

*Spokeo*, 136 S.Ct. at 1551 and 1553 (Thomas, J., concurring).

The above show WHBM caused Ms. Altman multiple concrete injuries. As this Court found, WHBM injured her by violating her substantive FACTA rights, and also by exposing her to a Congressionally-determined risk of identity theft. (ECF 28 at 12-13, 18-19). In addition, WHBM breached Ms. Altman's privacy interests by disclosing her private card information to its store staff, and it also forced Ms. Altman to take action to secure her receipt, to prevent further disclosure. Each of these injuries satisfies Article III. Thus, once again, WHBM's standing challenge fails.

## II.    As this Court Already Found, WHBM Injured Ms. Altman by Violating Her Substantive Rights.

### A. Controlling Authority Confirms the Violation of Ms. Altman's Substantive FACTA Rights Is a Concrete Injury.

This Court correctly found WHBM injured Ms. Altman by violating her substantive FACTA rights. (ECF 28 at 13 ("The alleged invasion of Plaintiff's substantive right to a truncated receipt means that Plaintiff 'has sufficiently alleged that she has sustained a concrete—*i.e.*, 'real'—injury…'") (citation omitted)). "The

Supreme Court has repeatedly affirmed the ability of Congress to 'cast the standing net broadly' and to grant individuals the ability to sue to enforce their statutory rights." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 635 (3d Cir. 2017), citing, *inter alia*, *Warth*, 422 U.S. at 500 ("The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights…"). Specifically, as Justice Thomas noted, it is well established that the violation of private or substantive statutory rights, by itself, is an Article III injury. *See Spokeo*, 136 S.Ct. at 1553 ("A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right.") (Thomas, J., concurring) (citations omitted).

The *Havens Realty* case Justice Thomas cites is particularly instructive. A *unanimous* Supreme Court ruled the violation of the plaintiff's statutory right not to be lied to about available housing was an Article III injury, even if the plaintiff did not actually seek housing, and interacted with the defendant "fully expecting" it to violate his rights. *Havens Realty*, 455 U.S. at 374 ("That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of § 804(d)."); *see also Bautz v. ARS Nat'l Servs., Inc.*, 226 F.Supp.3d 131, 141 (E.D.N.Y. 2016) ("in cases where a plaintiff sues to

enforce a substantive legal right conferred by statute, … the infringement of that right constitutes, in and of itself, a concrete injury.") (citations omitted), and at 142 (discussing *Havens Realty*).

Both before and after *Spokeo*, the Eleventh Circuit has followed *Havens Realty* to find a violation of substantive rights, by itself, satisfies Article III.[6] First, the Court ruled a plaintiff has standing to sue about an architectural barrier under the Americans with Disabilities Act, even if the plaintiff is a tester who deliberately encountered the barrier to enable him to sue and identified no harm beyond the violation. *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1330 and 1332 (11th Cir. 2013).

Second, as this Court discussed at length, the Eleventh Circuit followed *Havens Realty* post-*Spokeo* to hold the violation of a statutory right under the Fair Debt Collection Practices Act, by itself, is a concrete injury. (ECF 28 at 11-12, citing *Church v. Accretive Health, Inc.*, No. 15-15708, 654 Fed. Appx. 990, 995 (11th Cir. July 6, 2016)).

---

[6] *Spokeo* did not affect the validity of *Havens Realty* because *Spokeo* "does not state that it is redefining the injury-in-fact requirement" (*In re Horizon*, 846 F.3d at 638), and Supreme Court decisions remain binding until expressly overruled. *See Evans v. Sec'y, Fla. Dept. of Corrections*, 699 F.3d 1249, 1264 (11th Cir. 2012); and *Florida League of Prof'l Lobbyists, Inc. v. Meggs*, 87 F.3d 457, 462 (11th Cir. 1996) (courts must "continue to follow directly applicable precedent that rests on reasoning seemingly rejected in analogous cases"). Also, the Eleventh Circuit continues to follow *Havens Realty. See Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340 (11th Cir. 2017).

Specifically noting the right at issue was "substantive" (*Id.* at 995, n.2), the Eleventh Circuit ruled that "Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures." *Id* at 994. By analogy, this Court found that Congress created a new right with FACTA – the right to a truncated receipt – and a new injury – receiving a receipt that was not truncated. (*See* ECF 28 at 13).

Confirming the correctness of this Court's analysis, the Eleventh Circuit subsequently followed *Havens Realty* to again to find a violation of statutory substantive rights to be a concrete injury, this time under the Video Privacy Protection Act ("VPPA"). *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340 (11th Cir. 2017). The VPPA "codifies a context-specific extension of the *substantive* right to privacy." *Eichenberger*, 876 F.3d at 983 (italics in original). The plaintiff alleged no harm beyond violation of this right, but the Eleventh Circuit found there was no need to do so. *Perry*, 854 F.3d at 1340 ("Although Perry does not allege any additional harm beyond the statutory violation, the Supreme Court has made clear that our analysis does not end there."). Instead, the Court ruled the violation alone "constitutes a concrete harm" because "[t]he structure and purpose of the VPPA supports the conclusion that it provides actionable rights." *Perry*, 854 F.3d at 1340.

Likewise, as this Court found, FACTA's structure and purpose show that it was meant to provide actionable rights. (*See* ECF 28 at 12-13 ("Congress has provided Plaintiff Altman with a substantive right to receive a truncated credit card receipt."). Specifically, FACTA confers a narrow, privately-enforceable right on a particular class of consumers – cardholders – to protect them from the risk of theft and fraud that Congress found is created by memorializing too much of their account information on their transaction receipts. *See, e.g.*, *Hammer v. Sam's East, Inc.*, 754 F.3d 492, 498 (8th Cir. 2014) ("Congress gave consumers the legal right to obtain a receipt at the point of sale showing no more than the last five digits ...."). [7] Accordingly, every case in this Circuit to squarely address the issue has ruled FACTA confers substantive rights. [8]

---

[7] WHBM claims *Hammer* was overruled but that is incorrect and, as shown below, *Hammer* remains good law on the points for which this Court cited it. (See fn. 13, below).

[8] *See Guarisma v. Microsoft Corp.*, 209 F.Supp.3d 1261, 1265 (S.D. Fla. 2016) ("Congress has endowed plaintiffs with a substantive legal right, as opposed to creating a procedural requirement."); *Guarisma v. Hyatt Equities, LLC*, 2017 U.S. Dist. LEXIS 179837 at *11 (S.D. Fla. Sept. 28, 2017) ("FACTA creates a substantive right…"); *Bouton v. Ocean Properties Ltd.*, 201 F.Supp.3d 1341, 1352 (S.D. Fla. 2016) (same); *Flaum v. Doctor's Assocs., Inc.*, 204 F.Supp.3d 1337, 1342 (S.D. Fla. 2016) ("FACTA created a substantive legal right…"); *Amason v. Kangaroo Exp.*, 2013 WL 987935, *4 (N.D. Ala. Mar. 11, 2013) ("[FACTA] create[s] a substantive right to have one's financial information protected through truncation and also provide[s] a procedural right to enforce that truncation.").

Finally, Ms. Altman alleged and the undisputed facts show that WHBM violated her FACTA rights. Ms. Altman was entitled to a receipt that disclosed no more than the last five digits of her credit card number, but WHBM disclosed ten digits, *i.e.*, nearly two thirds, of her account number on the receipt. (SOAF at ¶6). Thus, she was injured.

### B. WHBM Does Not Show Any Change in Law or Fact, or Clear Error, Nor Can It Prove It Is Entitled to Judgment as a Matter of Law.

Although WHBM once again challenges this Court's conclusion that WHBM's violation of Ms. Altman's substantive FACTA rights is itself a concrete injury, WHBM still fails to present any change in fact or controlling law, or identify any clear error.

First, WHBM again fails to confront the reasoning of the Supreme Court's unanimous decision in *Havens Realty*, or the Eleventh Circuit's decisions in *Marod Supermarkets* and *Perry*. WHBM only briefly mentions *Havens Realty* in a footnote, and does not address *Marod* or *Perry* at all. As shown, each of these decisions demonstrates that the violation of one's substantive rights, without more, is a concrete injury.

Second, WHBM relies on cases that likewise do not squarely address *Havens Realty*, *Marod Supermarkets* or *Perry*, or *this Court*'s reasoning. Instead, most assume

without analysis that FACTA rights are "procedural,"[9] even though, as shown, cases that squarely address the issue find that FACTA confers substantive rights (see fn. 8 above). Likewise, none squarely confront the distinction between substantive and procedural rights, or why *Spokeo* expressly used the word "procedural" to qualify its discussion, and thus none have any bearing on that issue. WHBM's reliance on cases that make unwarranted assumptions, skip issues, and do not address controlling authority, cannot demonstrate clear error.

The only new appellate case WHBM cites suffers from these same defects. *See Bassett v. ABM Parking, Inc.*, 883 F.3d 776 (9th Cir. 2018).[10] Similar to cases before it,

_____

[9] The principle cases WHBM cites are *Bassett v. ADM Parking, Inc.*, 883 F.3d 776 (9th Cir. 2018); *Katz v. Donna Karan Co. Store, L.L.C.*, 872 F.3d 114 (2d Cir. 2017); *Crupar-Weinmann v. Paris Baguette Am., Inc.*, 861 F.3d 76 (2d. Cir. 2017); and *Meyers v. Nicolet Rest. of De Pere*, 843 F.3d 724 (7th Cir. 2016). As shown below, each is easily distinguishable. *Meyers* is the first decision, and it conflicts with its own circuit authority holding, as this Court found, that a violation of substantive rights is itself a concrete injury. *See Meyers*, 843 F.3d at 727, fn.2 (only discussing the issue of substantive rights in a brief footnote that cites no case law); *compare Kyles v. J.K. Guardian Sec. Servs.*, 222 F.3d 289, 303 (7th Cir. 2000) ("*Havens* and *Dwivedi* reveal these to be key distinctions. As both cases recognize, Congress has the authority to create a substantive right, the denial of which alone gives rise to a cognizable injury…"); *Bellwood v. Dwivedi*, 895 F.2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights …, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury").

[10] *Bassett* is also distinguishable because it dealt with a violation of FACTA's requirement that receipts mask card *expiration dates*, whereas WHBM violated FACTA's requirement that receipts properly mask card *account numbers*. As shown in the discussion of WHBM's exposure of Ms. Altman to a Congressionally-

18

*Bassett* just assumes FACTA confers procedural rights. *See id.* at 783 ("Bassett's allegations of FCRA procedural violations …"). Indeed, *Bassett* contradicts itself by readily recognizing the substantive right at issue in *Havens Realty*, but then rejecting the idea of defining the substantive right FACTA provides, calling it "arbitrary" (while finding nothing arbitrary about labeling FACTA rights "procedural"). *See id.* at 782 and n.3.

*Bassett* goes on to incorrectly suggest the only substantive right FACTA could create is nondisclosure of information "to identity thieves" (*id.* at 782-783), but FACTA's text does not require actual disclosure "to" identity thieves or anyone else. 15 U.S.C. §1681c(g)(1). Again, FACTA creates a right of nondisclosure on the receipt to prevent *the risk* of identity theft such disclosure creates, regardless of whether identity theft actually occurs. As this Court noted, "Congress did not find the risk of

_____

determined risk of harm (*see* §III below), this distinction is critical because *Bassett* principally turned on that court's belief that Congress later decided, by amending FACTA, that disclosing card expiration dates causes no risk of harm. *See Bassett*, 883 F.3d at 781. By contrast, that same amendment reaffirmed Congress's belief that account numbers must be masked to prevent harm. *See id.* ("Congress stressed that 'proper truncation of the card number … prevents a potential fraudster perpetrating identity theft or credit card fraud.'") (citation omitted).

identity theft to be speculative." (ECF 28 at 19). Finally, *Bassett* does not meaningfully distinguish *Havens Realty*,[11] or address *Marod Supermarkets* or *Perry*.

Third, WHBM misstates the record. It claims this Court's initial rejection of WHBM's arguments "relied primarily" on non-binding opinions WHBM thinks the Court should ignore, including the Eighth Circuit's decision in *Hammer*, the Eleventh Circuit's decision in *Church*, and Justice Thomas's *Spokeo* concurrence. Far from "primarily" relying on *Hammer*, this Court "reviewed Hammer with caution" because of questions about a prior decision it relied on. (ECF 28 at 9, fn. 3). More importantly, WHBM ignores that this Court also relied on *Havens Realty* and *Marod Supermarkets*, which remain binding and squarely on point. (*See* ECF 28 at 12 ("In light of the Eleventh Circuit's reference to the Havens case in its new post-Spokeo standing opinion, this Court is unable to conclude that Havens (and Marod Supermarkets which is based on Havens) are 'off-point.'").

---

[11] *Bassett* tries to distinguish *Havens Realty* by noting the *Havens* plaintiff was lied to in violation of a right to truthful information, whereas "Bassett's receipt contains truthful information." *Bassett*, 883 F.3d at 782, n.3. This is not a meaningful distinction because unlike the statute in *Havens*, FACTA rights do not concern the truth or falsity of information. By *Bassett*'s logic, the Eleventh Circuit erred in relying on *Havens* to find a concrete injury in *Perry* because the plaintiff in *Perry*, who claimed information was disclosed in violation of his statutory rights, did not also allege the information was false. *See Perry*, 854 F.3d at 1340.

Fourth, WHBM's grounds for attacking the Court's reliance on *Church*, *Hammer* and Justice Thomas's concurrence are misplaced. WHBM claims "other courts" disagree with *Church*, but this does not show *Church* is wrong and, to the contrary, the Eleventh Circuit's subsequent decision in *Perry*, which cites both *Havens Realty* and *Spokeo*, demonstrates that *Church*'s reasoning is correct. *See Perry*, 854 F.3d at 1340 ("Although Perry does not allege any additional harm beyond the statutory violation, the Supreme Court has made clear that our analysis does not end there."). WHBM also questions *Church* because another case did not cite it, *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998 (11th Cir. 2016), but this omission does not show *Church* is wrong, and again *Perry* shows *Church* is right.[12] WHBM also tries to distinguish *Church* because it dealt with the Fair Debt Collection Practices Act instead of FACTA, but that distinction is immaterial.[13]

---

[12] *Nicklaw* dealt with a state law procedural "30 day" requirement for releasing mortgages, not federal substantive rights. *See id.* at 1000. The statute had a substantive component (the right to a recorded release of mortgage) and procedural component (the obligation to record the release within 30 days), but the plaintiff only alleged a violation of the procedural component because, by the time he sued, the release had been recorded. *See Ruk v. Crown Asset Mgmt., LLC*, 2017 U.S. Dist. LEXIS 41797 at *18 (N.D. Ga. Mar. 22, 2017) ("*Nicklaw* involved a mere filing deadline violation with no consequence."). If anything, *Nicklaw* supports Ms. Altman because it confirms exposure to a risk of harm (see §III below) is a form of concrete injury. *See Nicklaw*, 839 F.3d at 1003.

[13] WHBM cites an out-of-circuit district court case that questions why "why FDCPA and FACTA violations should be treated the same for standing purposes." *Crupar-*

Next, WHBM claims *Spokeo* "overruled" *Hammer*, but *Spokeo* did no such thing.

*Spokeo* does not mention *Hammer* or FACTA, and thus it does not affect the validity

of *Hammer*'s discussion of the structure and purpose of FACTA, or *Hammer*'s

conclusion.[14]

Last, WHBM claims it is wrong to consider Justice Thomas's discussion of the

distinction between public rights and private rights in *Spokeo* because WHBM claims

FACTA creates "a duty owed to the public, not just to Plaintiff." (ECF 138-1 at 18).

This argument is a non sequitur. The distinction between public and private rights

turns on whether the right is owed to the *entire* public at large versus a specific group,

not on whether the statute only creates rights for a single, named individual (which

no statute does). *See, e.g., Spokeo*, 136 S.Ct. at 1550 (examples of public rights are "free

navigation of waterways, passage on public highways, and general compliance with

---

*Weinmann v. Paris Baguette America, Inc.*, 235 F.Supp.3d 570, 576, n.3 (S.D.N.Y. 2017).
The answer is that Article III does not distinguish between the two statutes. A more
apt question would be, why wouldn't Article III treat them the same?

[14] WHBM's argument about *Hammer* is based on another Eighth Circuit case that also
did not reject *Hammer*'s discussion of FACTA. *See Braitberg v. Charter Comm.*, 836 F.3d
925 (8th Cir. 2016). Instead, *Braitberg* only questioned *Hammer* to the extent it can be
read to hold *all* statutory violations constitute a concrete injury. *See Braitberg*, 836 F.3d
at 930 ("the Supreme Court rejected this absolute view…"). But this Court did not
cite *Hammer* for that "absolutist" view, and indeed *Hammer* itself did not espouse that
"absolutist" view. To the contrary, *Hammer* expressly recognized "Article III places
meaningful limitations on the types of interests that Congress may define as
judicially enforceable rights." *Hammer*, 754 F.3d at 499.

22

regulatory law.") (Thomas, J., concurring) (citation omitted). As shown, FACTA plainly confers rights on a specific group – cardholders provided receipts at the point of sale – and it confers a private cause of action for its violation. *See Harris*, 564 F.3d at 1306.

Finally, it must be noted that because *Havens Realty*, *Marod* and *Perry* firmly support this Court's conclusion that the violation of Ms. Altman's substantive FACTA rights is itself a concrete injury, simply attacking this Court's reference to *Church*, *Hammer* and Justice Thomas's concurrence cannot demonstrate "clear error" (or any error). In sum, this Court correctly found WHBM's violation of Ms. Altman's FACTA rights is itself a concrete injury, WHBM does not show clear error in this conclusion, and it also cannot meet its burden of demonstrating entitlement to judgment on the issue. This injury alone demonstrates Ms. Altman's standing.

## III. As this Court Already Found, WHBM Exposed Ms. Altman to Congressionally Determined Risk of Harm.

This Court also correctly found WHBM's exposure of Ms. Altman to the Congressionally-determined risk of real harm FACTA protects against, *i.e.*, the risk of identity theft caused by memorializing credit card account information on one's transaction receipt, is a concrete injury. (*See* ECF 28 at 18 ("The Court finds that the fallacy of Defendant's argument is that it does not address the role of Congressional findings.")).

**A. Disclosing More than the Last Five Digits of Ms. Altman's Account Number on Receipts Exposed Her to a Risk of Real Harm.**

*Spokeo* holds that exposure to a "risk of real harm" is a form of concrete injury and that, in identifying concrete injuries, "the judgment of Congress play[s an] important role[]." *Spokeo*, 136 S.Ct. at 1549 (brackets added). Congress is best equipped to identify the risks associated with identity theft, and the means to eliminate that risk. *See Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 665-66 (1994) ("Congress is far better equipped than the judiciary 'to amass and evaluate the vast amount of data' bearing upon" legislative questions), *quoting Walters v. Nat'l Assn. of Radiation Survivors*, 473 U.S. 305, 331, n.12 (1985). Accordingly, Congress is also empowered to enact legislation establishing a particular harm or risk of harm is real, *i.e.*, "concrete," even if that harm or risk might not have been recognized as real on its own:

> because Congress is well positioned to identify intangible harms that meet minimum Article III requirements … Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy *where none existed before*.

*Spokeo*, 136 S.Ct. at 1549 (emphasis added, citation omitted).

Congress did so with FACTA. *See Redman*, 768 F.3d at 639 ("identity theft is a serious problem, and FACTA is a serious congressional effort to combat it."). As shown, Congress conducted hearings, took evidence, and ultimately determined that

disclosing more than the last five digits of debit or credit card account numbers on point-of-sale receipts exposes cardholders to a material risk of theft and fraud. (See fn. 1, above).

This Court agreed. (ECF 28 at 15, fn.9 ("The Court has reviewed the Senate Report (pertaining to amending the Fair Credit Report Act) and it appears to the Court that Congress did not see the risk of identity theft as hypothetical."), citing Sen. Rep. 108-166; ECF 28 at 19 ("Congress did not find the risk of identity theft to be speculative.")). And the Supreme Court instructs that Congress's determination must be given "substantial deference." *Turner Broad. Sys.*, 512 U.S. at 666 ("Congress' predictive judgments are entitled to substantial deference…"); *see also Walters*, 473 U.S. at 330, n.12 ("When Congress makes findings on essentially factual issues such as these, those findings are of course entitled to a great deal of deference.").

Finally, Ms. Altman is among the persons Congress found exposed to this real risk. Again, WHBM disclosed ten digits, *i.e.*, two-thirds, of her account number, enabling anyone who saw the receipt to collect this information and use it to subject her to identity theft. (SOAF at ¶6). Ms. Altman's expert further confirmed the risk, describing it in detail. (SOAF at ¶11-¶22). Accordingly, this Court correctly ruled her exposure to this Congressionally-determined risk of real harm is an additional concrete injury.

### B. WHBM Does Not Show Any Change in Law or Fact, or Clear Error, Nor Can It Prove It Is Entitled to Judgment as a Matter of Law.

As this Court previously found, WHBM "does not address the role of Congressional findings" (ECF 28 at 18), which is improper because "Congress is far better equipped than [WHBM] to amass and evaluate the vast amount of data bearing upon" the issue, and its determination is owed "substantial deference." *Turner Broad. Sys.*, 512 U.S. at 665-66. WHBM also ignores Ms. Altman's expert.

Instead, WHBM just claims Ms. Altman incurred no risk because she took the trouble to hold on to her receipt instead of discarding it, to prevent any further disclosure. Putting aside that forcing Ms. Altman to take this action is an additional concrete injury (see §V below), Ms. Altman's subsequent mitigation of her risk does not change the fact that WHBM exposed her to the risk in the first place. Until WHBM disclosed two-thirds of her account number on the receipt, there was *no* risk. And once WHBM exposed Ms. Altman to the Congressionally-determined risk of harm, the Article III inquiry ends because "no minimum quantitative limit is required to establish injury." *American Civil Liberties Union v. Rabun County Chamber of Commerce, Inc.*, 698 F.2d 1098, 1108 (11th Cir. 1983). Again, an "identifiable trifle" is enough. *Common Cause/Georgia*, 554 F.3d at 1351, citing *Students Challenging Reg. Agency Procs.*, 412 U.S. at 689, n.14.

WHBM also claims the four FACTA appellate decisions it cites concluded there was no risk, but each case is easily distinguishable. Three of the four involved a failure to mask the card *expiration date,* whereas WHBM failed to truncate Plaintiff's *account number. See Meyers*, 843 F.3d at 727-728; *Crupar-Weinmann*, 861 F.3d at 81; and *Bassett*, 883 F.3d at 777. That difference is key because each case found it significant that Congress later amended FACTA to temporarily excuse expiration date violations, while still recognizing "proper truncation of the card number" is needed to eliminate the risk of harm. *See Bassett*, 883 F.3d at 780 (discussing all three cases). In other words, the amendment reaffirmed Congress's determination that WHBM's conduct, *i.e.*, disclosing nearly two-thirds of Ms. Altman's account number, exposed her to a risk of real harm.[15]

The fourth FACTA appellate decision WHBM cites (as well as district court cases it cites that rely on its reasoning, such as *Gesten, Tarr*, and *Taylor*) turn on facts that do not exist here. *See Katz v. Donna Karan Co., LLC*, 872 F.3d 114 (2d. Cir. 2017). *Katz* decided no "clear error" was shown in a lower court finding that it was harmless

---

[15] The amendment was the Credit and Debit Card Receipt Clarification Act of 2007 ("Clarification Act"), and it was only meant to provide a temporary amnesty from early lawsuits arising from merchants' failure to mask card *expiration dates. See Wood*, 201 F.Supp.3d at 1339 ("the statute places no limits on liability for FACTA violations occurring after June 3, 2008, when 'the Clarification Act's safe harbor expired.'"). The amendment has no application here because again, WHBM disclosed too much of Ms. Altman's card *account number*, not her card expiration date.

to disclose the first six digits of the plaintiff's account number because allegedly the first six digits contained no information personal to him. *Id.* at 116. By contrast, here the first six digits of Ms. Altman's credit card number *do* contain information personal to her. Because Ms. Altman's card is an American Express card, two of the first six digits reveal part of her unique personal account number. (SOAF at ¶11).

In any event, the notion that disclosing the first six digits of any card is harmless is a non sequitur because, in addition to violating Congress's express command that those digits be masked, it ignores Congress's purpose in requiring all but the last five digits to be masked. Again, Congress aimed to prevent thieves from deducing the *full* account number, which is what enables a thief to commit fraud. *See Redman*, 768 F.3d at 626 ("the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information.").[16] Disclosing ten of sixteen digits squarely implicates this concern because a thief who sees the receipt will be two-thirds of the way to the full account number. Conversely, there is no easy way for the thief to

---

[16] *See also* Vol. 154, No. 78 Cong. Rec. H3730 (May 13, 2008) (the card number is the "single most crucial piece of information that a criminal would need to perpetrate account fraud.""); *Facts on FACTA, the Fair and Accurate Credit Transactions Act*, Privacy Rights Clearinghouse (Aug. 2004) at p.4 ("full account numbers …. are a gold mine for identity thieves.") (available at: http://www.tppa.com/wp-content/uploads/factactfacts.pdf) (last accessed April 6, 2018).

otherwise learn or deduce the first six digits.[17] Thus, regardless of what information the first six digits "contain" or "represent," their disclosure subjects cardholders to the very risk Congress sought to eliminate. Accordingly, this Court correctly determined WHBM's exposure of Ms. Altman to this Congressionally-determined risk is a concrete injury, there is no clear error, and WHBM does not and cannot demonstrate it is entitled to judgment as a matter of law on the issue.

## IV. WHBM Also Injured Ms. Altman by Violating Her Privacy Interests.

In addition to the injuries this Court found, Ms. Altman also suffered an injury-in-fact because WHBM's disclosure of Ms. Altman's account information to the store clerk who printed and handed her the receipt violated her privacy interests. FACTA

---

[17] Cases that opine there is no harm in disclosing the first six digits base that conclusion on the assumption that the first six digits only identify the card issuer, whose name can be lawfully included on a receipt, plus the assumption that disclosing the card issuer's name is the same as disclosing the first six digits. *But it is not*. A thief that learns the issuing bank's name cannot use that information to reverse engineer or "look up" the first six digits of a particular consumer's card because banks use multiple first-six-digit combinations to issue cards. For example, Bank of America uses nearly 250 combinations. *See* www.creditcardvalidator.org/bank-of-america. Thus, learning the card-issuing bank's name would not enable a thief to deduce the first six digits of any particular consumer's account number and, accordingly, it would not bring the thief any closer to learning the full account number. The cases that find no harm in disclosing the first six digits do not discuss this. Their reasoning has been criticized by later cases that found standing. *See Gennock v. Kirkland's, Inc.*, 2017 U.S. Dist. LEXIS 196979, at *14 (W.D. Pa. Nov. 29, 2017) ("Some of these cases take a circuitous route through FACTA…"), *adopted* 2018 U.S. Dist. LEXIS 3543 (Jan. 4, 2018).

was created in part "to protect the secrecy, and, thus, the privacy of card holders' complete payment card account numbers and information." *Creative Hospitality Ventures, Inc. v. U.S. Liab. Ins. Co.*, 655 F.Supp.2d 1316, 1333 (S.D. Fla. 2009). Specifically:

> Congress, at the very least, recognized a card holder's right of privacy in the card holder's complete card account number and account information, and a corresponding right of privacy not to have that information exposed on an electronically printed payment card receipt.

*Id.* at 1334. Indeed, when signing FACTA into law, President Bush expressly noted Congress was "act[ing] to protect individual privacy." *Id.* at 1333, *quoting* 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003).

This injury is concrete because it "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S.Ct. at 1549. Courts "have recognized as a 'species of privacy violation … violations of a right to secrecy of personal information ….'" *Creative Hospitality Ventures*, 655 F.Supp.2d at 1333-34, quoting *Hooters of Augusta v. Am. Global Ins. Co.*, 157 Fed. Appx. 201, 208 (11th Cir. 2005). Moreover, "'unauthorized disclosures of information' have *long* been seen as injurious." *In re Horizon*, 846 F.3d at 638 (italics added), quoting *In re Nickelodeon Privacy Litig.*, 827 F.3d 262, 274 (3rd. Cir. 2016).

Indeed, "the unlawful disclosure of legally protected information" has been expressly held to be a "clear *de facto* injury." *In re Nickelodeon Privacy Litig.*, 827 F.3d at 274. That is precisely what Ms. Altman suffered because FACTA makes it unlawful for WHBM to disclose her legally-protected card information on a receipt seen by store staff who handled it.

Moreover, this privacy breach enhances the risk of identity theft discussed above. Testimony to Congress confirmed the dangers of putting card account information within the reach of "unscrupulous employees."[18]

WHBM's staff would not have otherwise been able to see Ms. Altman's private account information, because WHBM's system is set up to have her to swipe her card through the reader instead of handing it to the clerk. (SOAF at ¶3). And even if WHBM's staff could see the information by some other (lawful) means, that would not negate the injury caused by the nonconsensual illegal disclosure. *See American Farm Bureau Fed'n v. EPA*, 836 F.3d 963, 968 (8th Cir. 2016) ("nonconsensual dissemination of personal information" is a concrete injury, even if "the disputed

_____

[18] *See* S. Hrg. 109-1087, Testimony of Mari J. Frank (May 10, 2005), p.75 ("There are many ways that fraudsters obtain data about us--it may be appropriated by, stolen mail, dumpster-diving, lost or stolen wallets, shoulder surfing, burglary, friends, relatives (only about 9 percent), **unscrupulous employees** …") (emphasis added). (available at https://www.gpo.gov/fdsys/pkg/CHRG-109shrg61787/pdf/CHRG-109shrg61787.pdf) (last accessed April 5, 2018).

information was publicly available on the Internet or available for public review.").

Accordingly, WHBM's breach of Ms. Altman's privacy interests is an additional concrete harm, further supporting this Court's determination that Ms. Altman has standing.

WHBM does not address this injury, and thus it presents nothing to dispute that it too independently demonstrates Ms. Altman's standing. For this additional reason, WHBM does not and cannot meet its burden of proving clear error, or that it is entitled to judgment on as a matter of law.

## V. WHBM Injured Ms. Altman by Forcing Her to Take Action to Prevent Further Disclosure of Her Credit Card Account Information.

WHBM's conduct also injured Ms. Altman by forcing her to hold on to the receipt, to prevent further disclosure. *Deschaaf v. Am. Valet & Limousine, Inc.*, 234 F.Supp.3d. 964, 970 (D. Ariz. 2017) ("the consumer must take additional steps to ensure the safety of her identity; she may not simply crumple the receipt and throw it into a nearby trash can, but must review it to assess what was printed, hold on to it, and perhaps shred it or cut it up later."). Though perhaps less intrusive than some other injuries, it is no less real, which all that is required. *See Spokeo*, 136 S.Ct. at 1548.

Again, an "identifiable trifle" of injury satisfies Article III. *Common Cause/Georgia*, 554 F.3d at 1351. Forcing Ms. Altman to take the trouble to secure her receipt is a greater imposition than being forced to show ID, or alter one's path

through a courthouse to reduce contact with a religious monument, or having one's fax machine occupied for a minute, and yet the Eleventh Circuit found each of these injuries satisfy Article III. *See id.* ("they would still have standing to challenge the statute that required them to produce photo identification …"); *Glassroth v. Moore*, 335 F.3d 1282, 1292 (11th Cir. 2003) (altering behavior to reduce contact with allegedly-offensive monument); *Palm Beach Golf Ctr.-Boca v. John G. Sarris*, 781 F.3d 1245, 1251 (11th Cir. 2015) (fax line occupied for "one minute"). WHBM does not address this injury, and thus it presents nothing to dispute that it also supports Ms. Altman's standing.

Instead, WHBM lists a litany of other actions it suggests Ms. Altman could have taken to further mitigate the risk it exposed her to, such as filing a police report, obtaining a new card, or "calling WHBM." But the issue is not what she didn't do. The issue is what harm she incurred, and that harm includes being forced to keep her receipt to prevent further disclosure of the information in it, which WHBM admits she did do. Accordingly, this additional injury further demonstrates Ms. Altman's standing, and WHBM cannot show any clear error, or demonstrate it is entitled to judgment as a matter of law.

## CONCLUSION

Ms. Altman incurred multiple concrete injuries, each one demonstrates Ms. Altman's standing on its own, WHBM's latest request for reconsideration of the denial of its motion to dismiss fails because it does not present any new controlling law or fact, or demonstrate the Court clearly erred in rejecting WHBM multiple challenges to Ms. Altman's standing, and WHBM cannot meet its burden of proving it is entitled to judgment as a matter of law on that issue. WHBM's motion should be denied.

Respectfully submitted,

*s/ Michael S. Hilicki*
Keith J. Keogh (*pro hac vice*)
Michael S. Hilicki (*pro hac vice*)
Keogh Law, Ltd.
55 West Monroe St., Suite 3390
Chicago, IL 60603
Telephone: (312) 726-1092
keith@keoghlaw.com
mhilicki@keoghlaw.com

Justin T. Holcombe
Skaar & Feagle, LLP
(Ga. Bar No. 552100)
133 Mirramont Lake Drive
Woodstock, GA 30189
Telephone: (770) 427-5600

Bryant Lamer
Spencer Fane, LLP
1000 Walnut, Suite 1400

Kansas City, MO 64106
Ph: 816.292.8296
blamer@spencerfane.com

Counsel for Plaintiff-Respondent

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1D**

Pursuant to Local Rule 7.1D, the undersigned counsel certifies that this document has been prepared using 13 point Book Antigua font.

By: *s/ Michael S. Hilicki*
One of Plaintiff's Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 6, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which electronically delivered a copy to the parties listed below.

Barry Goheen
J. Anthony Love
King & Spalding
1180 Peachtree Street, N.E.
Atlanta, GA 30309-3521
404-572-4600
Fax: 404-572-4618
bgoheen@kslaw.com
tlove@kslaw.com

*s/ Michael S. Hilicki*
One of Plaintiff's Attorneys